Peletiah J. Marsh et al., Appellants, *v.* William A. Russell et al., Respondents.

The business of furnishing recruits during the war of the rebellion was a lawful one, and the members of a partnership formed for that purpose had a right to agree, in their articles of copartnership, that they would not come in competition with each other, or furnish recruits for less than a price fixed.

Such an agreement can only be condemned on proof that it was made as part of a conspiracy to control prices or create a monopoly, and so against public policy, or that it was made for some other unlawful purpose.

Plaintiffs and defendants entered into a contract that if they, or either of them, should make a contract with any town or towns of the county of W. to furnish recruits, they would share equally in the profits and losses of the business; and that, without the consent of all, they, or either of them, would make no contract for a less sum than $500 per man. In an action for an accounting, *held*, that the contract made the parties thereto copartners, and that it was not void, *per se*, as against public policy.

*Gulick* v. *Ward* (5 Halst., 87); *Gardiner* v. *Morse* (25 Me., 140); *Doolin* v. *Ward* (6 J. R., 194); *Atcheson* v. *Mallin* (43 N. Y., 147); *Hooker* v. *Van Dewater* (4 Den., 349); *Stanton* v. *Allen* (5 id., 434) distinguished.

*Marsh* v. *Russell* (2 Lans., 340) overruled.

(Argued May 22, 1876; decided May 30, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of defendants, entered upon the report of a referee.

This action was for an accounting as between copartners.

The complaint set forth the following contract:

"It is hereby understood and agreed, by and between the undersigned, that if the undersigned, or either of them, shall make a contract with one or more towns in Washington county, N. Y., to fill the quota of such town or towns, under an anticipated call of the government for volunteers, for a sum not less than five hundred dollars per man, *that all gains* or profits which may accrue in *such business* shall be divided

equally, share and share alike, between the undersigned, and that all losses shall be paid equally by them. It is further understood and agreed that the undersigned, or either of them, shall make no agreement to furnish the quota of any town for a less sum than five hundred dollars per man, without the consent of all the undersigned. That if two or more towns shall be contracted with to furnish their respective quotas for five hundred dollars per man, or more, by the undersigned, then, and in that case, it is hereby understood and agreed that the undersigned shall furnish eighteen men, or whatever the quota of the town of Hebron may be, at the rate of four hundred dollars per man.

June 18, 1864.

(Signed)          WM. A. RUSSELL.
                  H. R. COWAN.
                  A. M. BATES.
                  P. J. MARSH."

And alleged, in substance, that the parties thereto furnished recruits under said contract, making large profits, which were received by defendants, who refused to account, etc.

Upon the trial, and before any other proceedings were had, the defendants' counsel moved to dismiss the complaint, upon the ground that the same did not contain facts sufficient to constitute a cause of action. Plaintiffs' counsel offered to prove that the contract set forth in the complaint was not made by the parties thereto with intent to prevent competition in supplying recruits, or with the intention of raising the price of recruits, but was made for the purpose of preventing the parties to the contract from binding the partnership thereby created from furnishing recruits for an insufficient and unprofitable consideration; that the towns were not confined to filling quotas by contract with other parties, but were at liberty to employ such agents as they saw fit, on such terms as they chose, or to make bargains directly with recruits themselves; that, from a period long prior to the execution of the said contract to a period considerably subsequent thereto, the price of recruits was constantly and uniformly

rising ; that, soon after the execution of said contract, the price of recruits ran up to an amount more than double the consideration per man therein mentioned, and that said contract did have and could have no effect in raising such price ; and also to prove that a large number of men in Troy, in Rensselaer and Washington counties, as well as in other parts of the State, were engaged in the business of furnishing recruits and filling quotas, and that the parties to said contract did not, and could not, create any monopoly of that business.

To this the defendants' counsel objected upon the grounds, among others, that the intent and purpose of the contract was manifest upon its face ; that the necessary effect of it was to prevent competition between the parties to it.

The referee overruled the offer and sustained the objection, to which the plaintiffs' counsel duly excepted.

The referee granted the motion to dismiss, to which the plaintiffs' counsel duly excepted.

*Esek Cowen* for the appellants. The contract was not void as being against public policy, or for any other reason. (*Stanton* v. *Allen*, 5 Den., 434 ; *Hooker* v. *Van Dewater*, 4 id., 349.) Whether or not the object of the contract was to raise the price of recruits was a question of fact, to be determined upon all the circumstances of the case. (*Phippen* v. *Stickney*, 3 Metc., 384.) The invalidity of the contract would be no answer to this action. (*Tenant* v. *Elliott*, 1 B. & P., 3 ; *Farmer* v. *Russell*, id., 296 ; *Sharp* v. *Taylor*, 2 Ph. Ch., 801.)

*Nathaniel C. Moak* for the respondents. The contract in question was against public policy, and void, and the complaint was properly dismissed. (*Marsh* v. *Russell*, 2 Lans., 340 ; *Skeels* v. *Phillips*, 54 Ill., 309 ; *Atcheson* v. *Mallon*, 43 N. Y., 147 ; *Stanton* v. *Allen*, 5 Den., 434 ; *Wilbur* v. *Howe*, 8 J. R., 444 ; *Hooker* v. *Van Dewater*, 4 Den., 349 ; *Swan* v. *Chorpenning*, 20 Cal., 482 ; *Doolin* v. *Ward*, 6 J. R., 194 ; *Gardiner* v. *Morse*, 25 Me., 140 ; *Gulick* v. *Ward*, 5 Halst., 87 ; *Sayre* v. *Louisville Assn.*, 1 Duv. [Ky.], 143 ; *Hoggan*

v. *Wardlaw*, 8 Bro. P. C. [Tomlin's ed.], 281; *Noyes* v. *Day*, 14 Vt., 384; *Easton* v. *Mawkinney*, 37 Iowa, 601; *Dudley* v. *Odorn*, 5 S. C. R. [N. S.], 131; *Sharp* v. *Wright*, 35 Barb., 236; *Thompson* v. *Davis*, 13 J. R., 115.)    Plaintiffs' offer to prove the intent of the parties to the contract, and its effect, was properly overruled.    (*Bettinger* v. *Bridenbecker*, 63 Barb., 395; *Atcheson* v. *Mallon*, 43 N. Y., 147.)    The illegality appearing on the face of plaintiffs' case, they were properly nonsuited.    (66 Barb., 539.)

EARL, J.    The complaint was dismissed upon the ground that the contract set out therein was upon its face against public policy, and therefore void; the claim on the part of the defendants being that the necessary and direct effect of the contract was to prevent competition between the parties thereto in furnishing recruits.

The contract made the parties thereto partners in furnishing recruits for the towns of Washington county.    They were to be jointly interested in the business and to share equally in the profits and losses thereof.    As regulations of their business, they provided that the individual contracts of the members of the firm should inure to the benefit of the firm and that no contracts to furnish recruits should be made for a less sum than $500 for each recruit.    It does not appear that the parties had control of any recruits, much less that they had a monopoly of them, or that the towns were in any way obliged to get their recruits from them, or that the price charged was an unreasonable or unusual price, or that the parties did or could, by their contract, put up the price of recruits or embarrass the towns in filling their quotas, or that the agreement was kept a secret.    It is not a necessary inference from the terms of the contract that the purpose of the parties was an improper or unlawful one, or that its effect would be to thwart the policy of any law or to injure or jeopardize any public interest.

The business of furnishing recruits was a lawful one, and

could be carried on by individuals or firms; when carried on by a firm its members could regulate the price at which they would buy and sell, as they could if they had been dealers in other articles having a price. Suppose they had formed a partnership to buy and sell wheat, how can it be doubted that they could lawfully agree in their articles of copartnership that neither member of the firm should come in competition with the firm, and that wheat should not be purchased for more than a certain price nor sold for less than a certain other price? Such an agreement would, certainly, not upon its face, be unlawful, and could only be condemned by proof that it was part of a conspiracy to control prices or create a monopoly, or that it was made for some other unlawful purpose.

Our attention has been called to no case in conflict with these views. In *Gulick* v. *Ward* (5 Halst., 87), *Gardiner* v. *Morse* (25 Maine, 140), *Doolin* v. *Ward* (6 Johns., 194), and other cases cited, there were agreements to prevent competition at auction sales made by public officers or in pursuance of law of property which was required to be sold to the highest bidders, and hence the agreements were held to be against public policy and void. At such sales firms may bid as well as individuals, and if the firms are formed for the honest purpose of carrying on a joint business, it matters not that the incidental effect may be to diminish the number of bidders. If, however, the primary object of the firm is to prevent competition then it might be considered as against public policy. In *Atcheson* v. *Mallin* (43 N. Y., 147) the general rule was laid down that when a contract for the performance of any public service or work is to be awarded to the bidder therefor offering terms most favorable to the public, any agreement between parties, designing to make bids, tending either directly or indirectly to restrain or lessen rivalry and competition between them, is void as against public policy; even although it may not appear that such agreement did really produce any result detrimental to the public interest. In that case, however, Folger, J., stated that: "A joint proposal, the result of honest co-operation, though it might

prevent the rivalry of the parties and thus lessen competition, is not forbidden by public policy." In that case a board of town auditors were by statute authorized to receive sealed proposals for the collection of the taxes to be assessed on the town and to award the collection of the taxes to the person who should propose to collect the same on terms most favorable to the town; and it was held that an agreement between two persons, each sending in distinct sealed proposals that if the collection should be awarded to either both should share equally in the profits, if any, and contribute equally to the losses, was against public policy and void. It was held that the natural tendency and necessary operation of such an agreement was to prevent rivalry and competition. That case differs in some of its essential features from this. There was a case where the public officers were bound to let the contract to the lowest bidder, and they had not the option to seek contractors wherever they could find them; and in such cases agreements tending to prevent competition among bidders are scrutinized by the courts more closely than in other cases. Then, again, there could be no apparent purpose for such an agreement except to prevent competition between the parties thereto. The collection of the taxes was a business requiring no capital and no great labor or skill; it was a business usually, if not necessarily, conducted by one person. Both parties put in bids, each knowing the bid of the other; and thus, while there was apparent, there was no real competition, and the public officers and others could thus be deceived. That case is not, therefore, a controlling authority for defendants in this case.

In *Hooker* v. *Van Dewater* (4 Denio, 349) and *Stanton* v. *Allen* (5 id., 434), there were combinations between owners of canal boats, expressly and primarily, to regulate the price of freights on the canals, and the manifest purpose of the agreement made was to prevent competition between the public carriers upon the canals; and the agreements were properly held void, as against public policy.

The true rule is laid down in *Phippen* v. *Stickney* (3 Met.,

384), where it was held that an agreement between A and B that A will permit B to become the purchaser of certain property about to be offered for sale at public auction, and that A shall participate with B in the benefits of the purchase, was not upon its face fraudulent, but would or would not be so, as the circumstances of the case showed innocence of intention or a fraudulent purpose in making such agreement. Dewey, J., says: " When such an agreement is made for the purpose and with the view of preventing fair competition, and by reason of want of bidders to depress the price of the article offered for sale, below the fair market value, it will be illegal and may be avoided as between the parties, as a fraud upon the rights of the vendor. But, on the other hand, if the arrangement is entered into for no such fraudulent purpose but for the mutual convenience of the parties and for a reasonable and honest purpose, such agreement will be valid and binding." So here, if it could be shown that this agreement was made by the parties for the purpose of perpetrating frauds upon the towns of Washington county and compelling them, by preventing competition, to pay an enhanced price for recruits, and not for the honest purpose of carrying on a legitimate enterprise in an honest way, it would be brought within the cases cited by the learned counsel for the defendants and would be considered as against public policy.

Therefore, without considering the claim made on behalf of the plaintiff, that whether the contract was or was not void originally, they can recover because it has been executed, enough has been written to show that the judgment must be reversed.

Judgment reversed and new trial granted.

All concur; Folger, J., concurring in result; Miller, J., not voting.

Judgment reversed.