PETER MARIE et al., Appellants, *v.* CORNELIUS K. GARRISON, impleaded, etc., Respondent.

Special demurrers as known to the former practice were abrogated by the Code; and no pleading is now demurrable unless it is subject to one or more of the objections specified in the provisions of the Code, defining the grounds of demurrer. (Code of Civil Procedure, §§ 488 *et seq.*)

To sustain a demurrer to a complaint it is not sufficient that facts are imperfectly or informally averred, or that it lacks definiteness and precision, or that the material facts are argumentatively averred; it will be deemed to allege what can by reasonable and fair intendment be implied from the allegations.

*It seems* that the remedy for indefiniteness is not by demurrer but by motion. (Code of Civil Procedure, § 546.)

Plaintiffs' complaint alleged in substance that they were the owners in their own right and in trust for others, with full power of disposal, of certain shares of the stock of the P. R. R. Co.; that an action to foreclose a third mortgage on the road, brought in the interest of the defendant G., who owned a majority of the bonds secured by the mortgage, was pending, which action certain of the stockholders were defending, on the ground that the bonds were collusive and fraudulent; that some of the plaintiffs had filed a petition to come in and defend, when G., with a view to a

compromise, promised by letter that in consideration of the relinquishment by plaintiffs and defendant D. of further opposition to the foreclosure, in case he purchased the road on foreclosure sale, he would, upon the plaintiffs organizing a successor company and complying with certain conditions specified, convey the road to them; that plaintiffs performed the preliminary obligations contained in said agreement to be performed on their part, and in consequence G. procured a decree of foreclosure, and a sale of the road was effected; that the decree of foreclosure and sale would not have been made without their co-operation and consent; that after the making of said agreement and in consideration of the surrender of the letter by plaintiffs, and of their consent to a modification of the terms of the agreement, G. agreed that, in case of a sale under the decree, he would become the purchaser, and would forthwith organize a successor company, and convey the road to it, and would deliver to plaintiffs in return for their stock an equal amount of paid-up stock of the new company; that the road was purchased on the foreclosure for the benefit of G., and a new company was organized, to which the property was conveyed, but that G. refused to perform his agreement to issue the new shares in exchange for plaintiffs' stock. Upon demurrer to the complaint, *held,* that its averments were sufficient to constitute a cause of action, that it alleged a sufficient consideration for the original promise of G., and the surrender of the option given thereby to plaintiffs, was a sufficient consideration for the substituted agreement. Also, that the averment of a refusal by G. to issue new shares in exchange for the old stock implied a tender of the old shares.

It is not essential to the existence of a consideration for a promise that mutuality of obligation should exist between the parties at the time of the making of the promise.

Where a proposition is made by one party accompanied by a promise, a voluntary performance by another to whom the proposition was made of the requirements in consideration of the promise, constitutes a consideration which will uphold the promise, and make it binding.

The complaint was also demurred to on the ground of a misjoinder of parties, in that plaintiffs' interests were distinct and several, and so they could not unite. *Held,* untenable ; that it did not follow from the fact of an individual or several ownership by the plaintiffs of the shares in the old company that their interest in the contract with G. was not joint ; that plaintiffs had a right to combine their shares, and to enter into contracts jointly, which was in fact done; that as to the stock held by plaintiffs as trustees, they could maintain an action in their own names, without setting out the trusts, at least that it did not appear on the demurrer that they were not so entitled.

The agreement was claimed to be unlawful, as a collusive arrangement to establish a fraudulent debt and as calculated to prevent competitive bidding on the foreclosure sale. *Held,* untenable.

The mere fact that an arrangement entered into by parties having an interest in property about to be sold at public or judicial sale, with honest motives, for the purpose of preserving their interests, may incidentally restrict competition upon such sale, does not render the agreement illegal.

*Marie* v. *Garrison* (13 J. & S. 158), reversed.

(Argued October 12, 1880; decided November 30, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of defendants, entered upon an order made April 30, 1879, reversing an order of Special Term, which overruled a demurrer to the complaint herein, and sustaining said demurrer. (Reported below, 13 J. & S. 158.)

This action was brought to recover damages for an alleged breach of contract.

The complaint alleged in substance that the plaintiffs and the defendant, John T. Denny, owned and held, " either in their own right or in trust for others, with full power of disposition," 36,000 shares of the capital stock of the Pacific railroad of Missouri; that the defendant, Garrison, held $2,200,000 out of an issue of $4,000,000 of bonds issued by the said Pacific railroad, known as "Third Mortgage Bonds;" that said bonds were of doubtful validity, it being claimed by the stockholders that they were collusive and fraudulent; that in November, 1875, a collusive suit, in the interest of Garrison and those associated with him, had been commenced by George E. Ketchum, to foreclose the mortgage given to secure the said bonds; that Garrison was admitted as a co-complainant therein; that certain stockholders had intervened in said suit and filed an answer and cross-bill, alleging collusion and fraud on the part of the directors of said road in the issue of said bonds; that some of the plaintiffs had filed a petition to be made parties defendant in said suit, and to be allowed to intervene and defend in their own behalf and in behalf of all other stockholders; that the stockholders' interest in the equity of redemption in said railroad was of a value of $8,000,000; that on or about the 29th

day of March, 1876, the defendant, Garrison, " with a view of compromising said conflicting claims,        *        *        *        *
and in consideration of the relinquishment by plaintiffs of all further opposition to the foreclosure suit," entered into an agreement with plaintiffs, evidenced in part by a letter written by Garrison to plaintiffs and Denny, a copy of which letter was annexed to and made part of the complaint. The substance of it was, that in the event the road was sold under the foreclosure procedings, and Garrison became the purchaser, and if, at any time within six months after such purchase the parties to whom the letter was addressed should organize a successor company, and should pay to him certain expenses and disbursements specified, he would convey to them or to the successor company the property so purchased. Further conditions were stated as to the issuing and disposal of bonds and stock by the new company.

The complaint then contained the following averments:

" The plaintiffs aver that they and the defendant Denny performed and fulfilled all the preliminary obligations in the said agreement contained and agreed to be performed on their part and behalf, and in consequence thereof said defendant, Garrison, was enabled to procure a judgment and decree of foreclosure on or about June 6, 1876, and a sale of said premises on or about the 6th day of September, 1876, which sale was confirmed by the court in the month of October, 1876."

" That the plaintiffs say that in the month of June, 1876, at and in the city of New York, the plaintiffs and the said Denny, at the special instance and request of the said defendant Garrison, surrendered the aforesaid letter to said Garrison, and in consideration of such surrender, and of the plaintiffs consenting to a modification of the terms of said agreement with said Garrison, as contained in part in said letter, said Garrison promised to and agreed with the plaintiffs and said Denny, that in the event said Pacific railroad (of Missouri) should be sold under the decree of foreclosure in said suit, and in the event that he, said Garrison, or any one for him, should become the purchaser thereof, he would forthwith

organize a successor company under the laws of the State of Missouri, and would convey or cause to be conveyed thereto all the property of the said Pacific railroad purchased at the said foreclosure sale under said decree; that the capital of the said successor company should not exceed $8,000,000 in amount, and that after executing new bonds and a new mortgage in the amount of $4,500,000, to be issued and used in satisfying and paying off the claims of the said third mortgage bondholders, or of the holders of the income and improvement bonds of said company, he would deliver to the plaintiffs and said Denny, in return for the amount of stock of the Pacific railroad so as aforesaid held by them, thirty-six thousand full paid shares of the par value of $100 each, amounting in the aggregate to the sum of $3,600,000, which stock was to be issued by the said successor company, and the said Garrison then and there promised to and agreed with the plaintiffs and said Denny to purchase the said property at the said foreclosure sale, and assured them of his power and intention of protecting them in their rights of property as stockholders of the said Pacific railroad.

\*     \*     \*     \*     \*     \*     \*

" The plaintiffs aver that, without their co-operation and consent, a decree of foreclosure and sale would not have then been made, or made at all until after a trial by the court, the result of which trial was in doubt; the plaintiffs claiming as above set forth in relation to the bonds and mortgage given to secure the payment of the same."

The complaint then alleged, that on or about September 6, 1876, the said road and the property of the company was sold under the foreclosure decree, and was purchased by one Baker for Garrison, who, in connection with Baker, immediately organized a successor company, to whom the property was conveyed, " in which organization he then and still does refuse to allow the plaintiffs any interests or benefits." Also, " that, although often requested so to do, the said Garrison has refused and does refuse to fulfill his said contract and agreement with the plaintiffs, and to issue or cause to be issued and delivered to the plaintiffs thirty-six thousand shares of stock in

said company, in exchange for the stock of the Pacific railroad, so as aforesaid held by the plaintiffs."

The complaint was demurred to on the following grounds: 1st. That it did not state facts sufficient to constitute a cause of action. 2d. That it did not appear that plaintiffs, or either of them, had a legal capacity to sue, as it did not appear whether they were suing in their own right or in trust for others, and no authority was shown to sue in trust. 3d. That there was a misjoinder of parties plaintiff, as it did not appear that they had any joint cause of action. 4th. That there was a defect of parties plaintiff, as other parties should have been joined as plaintiffs.

*Wm. A. Beach* for appellants. A complaint is not to be deemed as uniting several causes of action because it sets forth several grounds relative to the same transaction, on either of which the defendant would be liable. (*Durant* v. *Gardner*, 10 Abb. Pr. 445; *Adams* v. *Holley*, 12 How. Pr. 329; *Sheldon* v. *Lake*, 9 Abb. Pr. [N. S.] 306; *Thompson* v. *Minford*, 11 How. Pr. 273; *Buckner* v. *Astor Mut. Ins. Co.*, 1 E. D. Smith, 553.) A demurrer on the ground of insufficiency can only be sustained when the complaint presents defects so substantial and fatal as to authorize the court to say, taking all the facts to be admitted, that they furnish no cause of action whatever. (*Richards* v. *Edick*, 12 Barb. 260; *Graham* v. *Camman*, 5 Duer, 697; *Prindle* v. *Carruthers*, 15 N. Y. 425; *The People* v. *Ryder*, 12 id. 436.) The complaint sets forth a valid contract between the parties, and a breach thereof by the defendant, Garrison. (2 Blackstone's Com's, 446; *Sturges* v. *Crowninshield*, 4 Wheat. 197; 1 Parsons on Contracts, p. 6; *Van Alstyne* v. *Van Slyck*, 10 Barb. 383; *Sands* v. *Crooke*, 46 N. Y. 564; *Dutch* v. *Mead*, 4 J. & S. 429, affirmed 59 N. Y. 628; *Worrall* v. *Munn*, 5 id. 229; *Justice* v. *Long*, 42 id. 493; *Dair* v. *U. S.*, 6 Wall. 4.) The promise of defendant was founded on sufficient consideration. (*Palmer* v. *North*, 35 Barb. 282; *White* v. *Hoyt*, 73 N. Y. 505; *Donner* v. *Church*, 44 id. 647; *Wehrum* v. *Kuhn*, 2

J. and S. 336, affirmed 61 N. Y. 623; *Coster* v. *Brush*, 25 Wend. 628; *Union Bk.* v. *Geary*, 5 Peters, 99; *Sykes* v. *Chadwick*, 18 Wall. 141; *Gratz* v. *Cohn*, 11 How. 1; *French* v. *Shoemaker*, 14 Wall. 314; *Phillpot* v. *Grumerger*, id. 576; *Bohn* v. *Goldstein*, 53 N. Y. 634; *Ledrum* v. *Clarke*, 6 Weekly Dig. 438; *White* v. *Baxter*, 71 N. Y. 254.) Where a defendant has actually received the consideration of an agreement, it is no answer to an action against him for a breach of his covenants in the same to say that the agreement did not bind the plaintiff to perform the promises on his part therein contained, if in fact it appears that the promises in question have been performed in good faith and without prejudice to the defendant. (Addison on Contracts [6th ed.], 15; *Morton* v. *Burn*, 7 Ad. & El. 19; *Storm* v. *U. S.*, 94 U. S. R. [4th ed.] 15.) The surrender of the written contract to defendant was abundant consideration for the second parol promise. (*Mason* v. *Decker*, 72 N. Y. 595; *Munroe* v. *Perkins*, 9 Peck. 298.) The contract related to an incorporeal thing, having no apparent palpable form. The statute of frauds does not apply. (*Coleman* v. *Eyre*, 45 N. Y. 38; *Parsons* v. *Loucks*, 48 id. 17; *Smith* v. *N. Y. C. R. R.*, 4 Alb. Ct. of App. Dec. 262; *Cooke* v. *Millard*, 65 N. Y. 358; *Somerby* v. *Bunten*, 118 Mass. 279; *Williams* v. *Morris*, 95 U. S. Rep. [5 Otto] 444; Chitty Contr., 10th ed. 66, 278; 2 Story Eq. Juris., § 761; *Swain* v. *Seamans*, 9 Wall. 254.) If the rescission of the first agreement was ineffectual, it must remain a valid and subsisting obligation. (*Pope* v. *Nance*, 1 Stew. [Ala.] 354.) The surrender of the certificates of stock after the property which they represented was gone, was a mere matter of form, and was not necessarily called for under the contract as alleged. (*Highland T. Co.* v. *McKean*, 11 Johns. 98; Sergeant Williams' 2d Rule in note to *Pordage* v. *Cole*, 1 Wm. Saunders, 310; *Underhill* v. *S. & W. R. R. Co.*, 20 Barb. 455; *Northrup* v. *Northrup*, 6 Cow. 296; *Morris* v. *Silter*, 1 Denio, 59; *Paine* v. *Brown*, 37 N. Y. 228.) It is a question of intention whether the several parts of a contract made at one and the same time are to be taken distributively and are independent, or whether entire perform-

ance by one party is a condition precedent to his right of recovery against the other party in respect to a portion of the contract which he has fully performed. (*Tipton* v. *Feitner*, 20 N. Y. 430; *Bennett* v. *Exr. of Pixley*, 7 Johns. 249; *Tompkins* v. *Elliott*, 5 Wend. 496.) The breach of the contract by Garrison relieved the other party from the useless formality of tendering performance even of a condition precedent, and gives immediate right of action. (*Horward* v. *Daly*, 61 N. Y. 370; *Cort* v. *Ambergate R. R. Co.*, 6 Eng. L. & Eq. 230; *Hockster* v. *Delavan*, 20 id. 157; *Frost* v. *Knight*, 7 Law Rep. 111 [Exc. Ch.]; *Burtis* v. *Thompson*, 42 N. Y. 246; *Franchot* v. *Leach*, 5 Cow. 506; *Trever* v. *Halsted*, 23 Wend. 66; *Cornwell* v. *Haight*, 21 N. Y. 462; *Blewett* v. *Baker*, 58 id. 611; *Shaw* v. *Republic Life Ins. Co.*, 69 id. 286; *Bunge* v. *Koop*, 48 id. 225; *Crary* v. *Smith*, 2 id. 60.) Tender by plaintiffs of this stock was not necessary. (*Hay* v. *Hay*, 6 Weekly Dig. 158; *Nichols* v. *Michael*, 23 N. Y. 264; *White* v. *Talmage*, 3 J. & S. 223; *Cornwell* v. *Haight*, 21 N. Y. 462; *Grugg* v. *Von Phul*, 1 Wall. 275.) He who prevents a thing being done shall not avail himself of the non-performance he has occasioned. (*Homer* v. *Guardian Mut. Life Ins. Co.*, 67 N. Y. 478; *Jenks* v. *Robertson*, 58 id. 621; *Gallagher* v. *Nichols*, 60 id. 438; *Risley* v. *Smith*, 64 id., 516; *Hawley* v. *Keeler*, 53 id. 114.) There is nothing illegal or prohibited in the contract itself. (*Marsh* v. *Russell*, 66 N. Y. 288; *Philpen* v. *Stickney*, 3 Metc. 384; *Wicker* v. *Hoppock*, 6 Wall. 94.) The question of an illegal consideration cannot be raised on a demurrer; it must be pleaded. (*Tyler* v. *Rand*, 7 How. U. S. 583; *Fellowes* v. *Taylor*, 7 Tenn. R. 475.) There was no misjoinder of parties plaintiff. (*Loomis* v. *Brown*, 16 Barb. 331; 1 Parsons on Contracts, 11; *Yorks* v. *Peck*, 14 Barb. 644.) If the demurrer is sustained and the judgment affirmed, plaintiffs should be allowed to amend their complaint under section 497 of the Code of Civil Procedure. (*Miller* v. *Mayor*, 76 N. Y. 151.)

*Henry L. Clinton and George F. Comstock* for respondents. To sue as trustees of express trusts under the Code, it was nec-

essary for plaintiffs to have named themselves as trustees in the title of the suit, and to have averred that they were such trustees, and to have set forth the nature and terms of their authority. (*Smith* v. *Livinus*, 4 Seld. 472, 474; *Freeman* v. *Fulton Fire Ins. Co.*, 14 Abb. Pr. 398; *Western R. R. Co.* v. *Nolan*, 48 N. Y. 513; *Root* v. *Price*, 22 How. Pr. 372–4; *Selden* v. *Hoyt*, 11 How. Pr. 11–14; Van Santford's Pl. marginal p. 93.) There being no executed consideration on the part of the plaintiffs, and no promise by them averred, the letter of Garrison of March 29, 1876, never became obligatory. (*Speer* v. *Downing*, 22 How. Pr. 30.) Under the Code the plaintiffs were bound to state the terms of their contract and what conditions precedent they were to perform. (*Adams* v. *Mayor, etc.*, 4 Duer, 295.) The cause of action attempted to be stated, being a contract not to bid at a judicial sale, is void. (*Hook* v. *Turner*, 22 Mo. 396; *Gray* v. *Hook*, 4 Conn. 449, 455; *Jones* v. *Casewell*, 3 Johns. 29; *Doolin* v. *Ward*, 6 id. 194; 8 id. 444; *Brisbane* v. *Adams*, 3 Conn. 129; Smith's Law of Contracts, marginal p. 193; *Ross* v. *Truax*, 21 Barb. 361; *Marsh et al.* v. *Russell et al.*, 66 N. Y. 292; *Saratoga Co. Bk.* v. *King*, 44 id. 87; *People* v. *Lord*, 6 Hun, 390; *Atcheson* v. *Mallon*, 43 N. Y. 147.) The allegation of a refusal by the defendant Garrison, without showing any offer of performance or even readiness to perform on the part of the plaintiffs, is not sufficient. (1 Chitty's Pl. [ed. of 1844] pp. 321, 326; *Oakley* v. *Morton*, 11 N. Y. 25–30; *Lester* v. *Jewett*, id. 453.) There is nothing in the amended complaint which shows such a unity of interest in the plaintiffs as authorizes them to join as such in this action. (*Jones* v. *Felch*, 3 Bosw. 63; *Buckman* v. *Brett*, 35 Barb. 596; 13 Abb. 119.) The contract being tainted with fraud was void. (*Miss. & Mo. R. R. Co.* v. *Howard*, 7 Wal. 392; *Jones* v. *Caswell*, 1 Johns. Cas. 29; *Doolin* v. *Ward*, 6 id. 194; *Wilbur* v. *Grow*, 8 id. 346; *Thompson* v. *Davies*, 13 id. 112; *Hawley* v. *Cramer*, 4 Cow. 191; [on demurrer], *Meech* v. *Bennett*, Lalor's Supp. 191; *Wheeler* v. *Wheeler*, 5 Lans. 355; *Brackett* v. *Wyman*, 48 N. Y. 567; *Atcheson* v. *Mallon*, 43 id. 147; *Howell* v. *Mills*, 53 id. 322.)

ANDREWS, J. . Special demurrers, as known to the former practice, have no place in our present system of pleading. The Code authorizes a demurrer for specific causes and no pleading is demurrable unless it is subject to one or more of the objections specified in the section defining the grounds of demurrer. A demurrer to a complaint for insufficiency can only be sustained when it appears that, admitting all the facts alleged, it presents no cause of action whatever. It is not sufficient that the facts are imperfectly or informally averred, or that the pleading lacks definiteness and precision, or that the material facts are only argumentatively averred. The complaint on demurrer is deemed to allege what can be implied from the allegations therein, by reasonable and fair intendment, and facts impliedly averred are traversable in the same manner as though directly averred. (1 Chitty's Pl. 713; *Haight* v. *Holley*, 3 Wend. 258; *Prindle* v. *Caruthers*, 15 N. Y. 425.) The remedy for indefiniteness is not by demurrer, but by motion. (Code, § 546; *Seeley* v. *Engell*, 13 N. Y. 542.) "Indefiniteness," says Chitty, "is in general only matter of form." (1 Chitty's Pl. 717.) The rule by which, under the Code, the sufficiency of a complaint is to be determined is stated by DENIO, J., in *Zabriskie* v. *Smith* (13 N. Y. 330.) He says: "It is sufficient that the requisite allegations can be fairly gathered from all the averments in the complaint, though the statement of them may be argumentative, and the complaint deficient in technical language."

In the light of these rules we proceed to examine the question whether the complaint in this case sets forth a cause of action. It is undoubtedly essential, to sustain the complaint, that it should appear therein that a valid contract was entered into by Garrison, from the breach of which a right of action has accrued to the plaintiffs and Denny. It is insisted, on the part of Garrison, that the promise upon which the action is based is, so far as the complaint shows, a mere *nudum pactum*, no valid consideration therefor being averred. The oral agreement of June, 1876, upon which the action is brought, is alleged to have been made in consideration of the surrender by the

plaintiffs and Denny to the defendant, Garrison, of the letter of March 29, 1876, and of their consenting to a modification of the terms of the agreement contained therein, and no other consideration is averred or can be gathered from the terms of the substituted agreement. If the contract surrendered was itself a *nude pact*, its surrender formed no valid or legal consideration for the substituted promise. If, on the other hand, it was binding and valid, it needs no citation of authorities to show that its surrender was in law a good consideration for the new agreement.

Does, then, the complaint show, either directly or by fair inference, a valid consideration for the conditional promise of the defendant, Garrison, contained in the letter? No consideration appears in the letter itself. It shows in general terms the situation of the Pacific Railroad Company and the relation of the parties to it; that Garrison was the owner of a majority in amount of the third mortgage bonds of the road, and that the parties to whom the letter was addressed were stockholders therein, and that a foreclosure action to foreclose the third mortgage was pending at the suit of one Ketcham. The letter contains, in substance, a promise by Garrison that if he should purchase the road on the foreclosure, he would, upon the plaintiffs organizing a successor company within six months after the purchase and making the payments and complying with the other conditions specified, convey the road to them. He does not bind himself to purchase; but in the event that he does purchase his undertaking to convey the road on the terms stated is absolute. In substance, Garrison agreed in case he purchased the road to give the plaintiffs the option to take it upon the terms proposed at any time within six months after such purchase.

The complaint in its introductory averments sets forth that the plaintiffs and Denny " owned and held either in their own right, or in trust for others with full power of disposition," thirty-six thousand shares of the capital stock of the Pacific railroad of Missouri, of the aggregate par value of $3,600,000; that the defendant held $2,200,000

of the $4,000,000 issue of third mortgage bonds, which it is alleged were of doubtful validity, and were claimed by the stockholders to have been fraudulently and collusively issued by the directors of the company, and without the consent of the stockholders, as required by the laws of Missouri; that the defendant was solicitous to have the bonds adjudicated to be valid, and that a collusive foreclosure suit, in the interest of Garrison and others, was commenced by Ketcham in November, 1875, to foreclose the third mortgage, and was pending, in which suit the defendant had in April, 1876, been admitted as co-complainant, and had become the principal party in prosecuting the same; that certain stockholders had intervened in the suit, and filed an answer and cross-bill, alleging collusion and fraud on the part of the directors of the road in the issue of the bonds; that some of the plaintiffs had filed a petition in the foreclosure suit to be made parties, and to be allowed to defend the same in their own behalf, and in behalf of other stockholders; that the value of the equity of redemption in the road was $8,-000,000. Following these introductory averments of the complaint, are paragraphs five and six, upon which the plaintiffs rely as containing an averment of a consideration for the defendant's promise contained in the letter, as follows:

"5th. That on or about the 29th day of March, 1876, with the view of compromising said conflicting claims, and establishing the validity of said debt of $4,000,000 in the hands of said Garrison (the defendant Garrison) and others of his associate bondholders, and to prevent the plaintiffs from defending said foreclosure suit, and in consideration of the relinquishment by the plaintiffs of all further opposition to said foreclosure suit, the said Garrison, the defendant, entered into an agreement with plaintiffs, evidenced in part by a letter written by him to some of the plaintiffs and the defendant Denny, a copy of which is hereto attached, marked 'A,' and the same is made a part of this complaint.

"6th. The plaintiffs aver that they and the defendant, Denny, performed and fulfilled all the preliminary obligations in the said agreement contained and agreed to be performed on their

part and behalf, and in consequence thereof said defendant, Garrison, was enabled to procure a judgment and decree of foreclosure on or about June 6, 1876, and a sale of said premises on or about the 6th day of September, 1876, which sale was confirmed by the court in the month of October, 1876, viz.: October 6, which confirmation was modified October 23, 1876."

It is not averred that the plaintiffs and Denny agreed to relinquish their opposition to the foreclosure in consideration of the agreement of Garrison, contained in the letter. But the averments contained in the paragraphs quoted do fairly import that in consequence of their relinquishment of such opposition the defendant, Garrison, was enabled to procure a judgment of foreclosure and sale, and it is averred in a subsequent part of the complaint that without their "co-operation and consent a decree of foreclosure and sale would not then have been made, or made at all until after a trial by the court, the result of which trial was in doubt." It is not essential to the existence of a consideration for the defendant Garrison's agreement, that mutuality of obligation should have existed between the parties when his agreement was made. The necessary consideration would arise if the plaintiffs and Denny, in compliance with the proposition in his letter, and in consideration of his promise therein, did in fact discontinue their opposition to the foreclosure, although they did not at the time bind themselves to do so. When a defendant has actually received the consideration of an agreement by a voluntary performance of an act by the other party, upon his proposition or suggestion, such performance constitutes a consideration which will uphold the defendant's promise. (*Sands* v. *Crooke*, 46 N. Y. 564; *Morton* v. *Burn*, 7 Ad. & El. 25; *Storm* v. *U. S.*, 94 U. S. 83.) The fair intendment from the allegations of the complaint is that Garrison undertook to do the things promised in his letter, in case the plaintiffs would relinquish the opposition to the foreclosure, and that they did subsequently relinquish their opposition, thereby enabling him to secure judgment of foreclosure. In this view we think the complaint sufficiently averred a consideration for his original promise,

and that the surrender of the option to purchase the road, in case it should be bid off by Garrison, was a good consideration for the substituted oral agreement.

By the substituted agreement, Garrison agreed to bid off the road on the foreclosure sale, and organize a successor company, upon a basis stated in the complaint, and " deliver to said plaintiffs and said Denny, in return for the amount of the stock of the Pacific railroad so as aforesaid held by them, thirty-six thousand full paid shares of the par value of one hundred dollars each," in the new organization.

It is claimed that this agreement was illegal on two grounds : *first*, that it was a collusive arrangement between the parties to establish a fraudulent and invalid debt, and procure a sale of the property of the company thereon to the prejudice of the other stockholders and creditors ; and *second*, that the agreement was calculated to prevent competitive bidding between the parties on the foreclosure sale, contrary to the general principles and policy of the law.

We think that neither of these points is well taken. The complaint does not allege that the third mortgage bonds were in fact fraudulent. It alleges that they were of doubtful validity, and then proceeds to specify various particulars in respect to which it was claimed that they were invalid, as before stated. It is not alleged that Garrison was a party to the fraud, if any existed in the issue of the bonds, or that the company did not receive their full value, or that they were not given to secure a valid debt, nor does it appear that the mortgage debt could not have been enforced in equity against the property of the company. The allegations of the complaint do not justify the inference that the parties were colluding to enforce a fictitious debt against the company, and it is difficult to see what interest the plaintiffs could have had to have united in such a conspiracy.

In respect to the second ground of alleged illegality it is to be observed, that the magnitude of the property involved in the foreclosure would naturally prevent an individual (unless possessed of great wealth) from bidding on the sale. The

plaintiffs, who together owned a large number of shares, had a right to enter into any arrangement for the protection of their interests not prohibited by law. This was not the case of a combination between persons having no prior interest in the property to suppress bidding at a judicial sale for speculative purposes. The arrangement made was, so far as appears, a reasonable and honest attempt on the part of the plaintiffs, to save their property from being sacrificed on the foreclosure. The other stockholders and bondholders were at liberty to bid on the sale. The mere fact that an arrangement, fairly entered into, with honest motives, for the preservation of existing rights and property, may incidentally restrict competition at a public or judicial sale, does not, we think, render the arrangement illegal. The question of intent, at all events, is one for the jury, upon the whole facts as they shall appear on the trial. (*Marsh* v. *Russell*, 66 N. Y. 288; *Phippen* v. *Stickney*, 3 Metc. 384; *Wicker* v. *Hoppock*, 6 Wall. 94.)

The complaint shows that the road on the foreclosure sale was purchased for the defendant, Garrison, in the name of a third party, and that he subsequently organized a new company. The complaint then alleges, " that although often requested so to do, the said Garrison has refused and does refuse to fulfill his said contract with the plaintiffs, and to issue or cause to be issued and be delivered to the plaintiffs thirty-six thousand shares of stock in said (new) company, in exchange for the stock of the Pacific railroad, so as aforesaid held by the plaintiffs." It is claimed that the complaint is defective, for the reason that it shows no offer, readiness, or even ability to surrender the thirty-six thousand shares of old stock in exchange for the new shares. This objection is unanswerable, unless a tender of the old shares is implied in the averment of the refusal of Garrison to issue the new shares in exchange for the stock of the old company held by the plaintiffs. Bearing in mind that what is implied in an averment is on demurrer to be taken as if the thing implied is directly averred, and that an argumentative pleading is not for that reason demurrable, we conclude, although not without some hesitation,

that an averment of a refusal to exchange does import that the other party offered to do that without which no exchange could be effected, viz.: that he tendered the property or thing which was the consideration of that which he was to receive and which he called on the other party to deliver.

It is made a separate ground of demurrer that there is a misjoinder of parties plaintiffs. This is one of the grounds of demurrer under the new Code (§ 448). This objection is predicated in part upon the general rule that parties whose interests are divided, distinct and several, cannot unite as plaintiffs, and it is asserted that the interests of the plaintiffs under the contract sued upon were several and distinct within the rule stated. We concur in the view of the defendant's counsel that the rational construction of the pleader's allegation in the introductory clause of the complaint, that the plaintiffs and Denny " owned and held, either in their own right or in trust for others," the thirty-six thousand shares, etc., is that they held shares distributively and severally aggregating that number, one or more holding their shares individually, and one or more holding shares in trust, or that one or more, or each, held shares both individually and in trust. But we think it does not follow from the individual or several ownership by the plaintiffs of the shares in the old company, that their interest in the contract with Garrison was several and not joint, or that Garrison's contract was with the plaintiffs severally and distributively.

There seems to be no difficulty, in the nature of things, in the plaintiffs as owners of distinct and several shares of stock in the same company uniting and combining their shares in one aggregate for the purpose of sale as an entire property to one person, and taking from him a promise to pay them jointly a gross sum, equal to their aggregate interests, leaving them, as between themselves, to arrange the distribution of the fund which shall be derived from the sale. The circumstances of this case show that such an arrangement may be of great practical convenience, and we know of no peremptory rule of law which forbids it. The promise of Garrison was,

in form, a promise to the plaintiffs jointly. He entered into no undertaking to transfer to each plaintiff shares corresponding with the shares held by him in the old company. His promise was on receiving from the plaintiffs, as an aggregation of individuals, thirty-six thousand shares, to give them in exchange thirty-six thousand other shares. The shares to be transferred by them to Garrison, and by Garrison to the plaintiffs, were to be transferred *in solido*. The legal interest of the plaintiffs in the contract was joint, although their interest in the shares to be transferred by Garrison or in the damages which may be recovered may be unequal and separable. The construction of the contract is, we think, precisely the same as if the plaintiffs had been joint owners of the shares when the contract was made. (See *Emery* v. *Hitchcock*, 12 Wend. 156; *Loomis* v. *Brown*, 16 Barb. 331; 1 Pars. on Cont. 19, and cases in note.)

It is also claimed that there is a misjoinder of causes of action in behalf of trustees, with causes of action in favor of individuals, and also that the complaint is defective in not setting forth the trust under which the trust shares were held. But the averment in the complaint that the shares were held by the plaintiffs either in their own right or in trust, is an averment simply of legal title of the plaintiffs to the shares mentioned. The action is not an action by trustees to enforce a trust, or upon a contract made by the plaintiffs in a representative character. The contract is with the plaintiffs as individuals, and we are of opinion that an action may be maintained thereon by them in their own names, without setting out the trust or referring to their character as trustees. At least it cannot appear on demurrer that the plaintiffs are not entitled to maintain the action in their individual capacity. (See *Merritt* v. *Seaman*, 6 N. Y. 168; *Mellen* v. *Hamilton F. Ins. Co.*, 17 id. 615; 1 Chitty's Pl. 3.)

Our conclusion is that the demurrer was properly overruled at the Special Term. It must be admitted that the complaint is indefinite and argumentative, and that material facts are obscurely averred, but we think that it is not defective in sub-

stance within the rules by which the sufficiency of pleadings on demurrer is tested.

The judgment of the General Term should be reversed and the judgment of the Special Term affirmed, with leave to the defendant to answer on payment of costs.

All concur, except FINCH, J., taking no part.

Judgment accordingly.