ALEXANDER MYERS, PLAINTIFF, *v.* STEPHEN DORMAN, DEFENDANT.

*Agreement not to bid at a sheriff's sale — not void if made in good faith by persons having liens on the property — statute of frauds — when the defense thereof must be pleaded — what communications between attorney and client are privileged.*

On May 12, 1876, the plaintiff, the defendant and one Taylor each recovered a judgment against J. L. Dorman, upon each of which judgments an execution was issued to the sheriff. The three judgments amounted to $1,839.87. At that time the sheriff had levied on goods of Dorman under prior executions, amounting to $2,432.55. On the day of sale it was agreed between the defendant, the plaintiff and Taylor that the last two should refrain from bidding and permit the defendant to purchase the goods, he promising to pay to them the amounts due on their judgments. The defendant purchased the goods for $2,440, paid off a prior judgment of $100, and thereafter refused to pay the amounts due on the two judgments of the plaintiff and Taylor.

*Held,* that as the jury had found that the agreement was not made with any fraudulent intent to prevent bidding, and as all the parties to the agreement had liens upon the property, which they sought to protect by it, the agreement was valid, and the promise of the defendant to pay the amounts of the two judgments was enforceable.

*Marsh* v. *Russell* (66 N. Y., 288); *Marie* v. *Garrison* (83 id., 14) followed; *Thompson* v. *Davies* (13 Johns., 112) not followed.

That the defendant could not claim that the agreement was void under the statute of frauds, because:

(1.) He had not pleaded it as a defense to the agreement which was set out in the complaint.

(2.) His agreement was founded upon a new consideration, viz., the promise of the plaintiff and Taylor not to bid at the sale.

Communications between a person and one who has formerly acted as attorney for him in respect to the matter in which he has so acted, and arising therefrom, are privileged.

MOTION by the defendant for a new trial, on exceptions taken at the Steuben Circuit, and ordered to be heard at the General Term in the first instance.

*M. Rumsey Miller,* for the plaintiff.

*A. S. Kendall* for the defendant.

SMITH, P. J.:

On the 12th of May, 1876, the plaintiff, the defendant and one Taylor each recovered a judgment against John L. Dorman, a son of the defendant, and on the same day issued executions thereon to the sheriff. Each of said judgments was for over $600, and the three amounted to the sum of $1,839.87. At that time the sheriff had in his hands executions previously delivered to him on prior judgments amounting to the sum of $2,432.55, by virtue of which he had levied on the goods of the debtor. On the 15th of May, 1876, the sheriff being about to sell the goods under the said executions, an oral agreement was made between the plaintiff, the defendant and Taylor, in substance, that the plaintiff and Taylor would refrain from bidding at the sale and permit the defendant to become the purchaser, and that the defendant would pay the plaintiff and Taylor their said judgments, which, together with the defendant's judgments, were liens on the property. Pursuant to the agreement the plaintiff and Taylor refrained from bidding, except that Taylor made one bid at the request of the defendant in order to carry out the arrangement, and the defendant became the purchaser of the goods at $2,440. At the same time the defendant borrowed of the plaintiff $100 to pay a prior judgment, which was a lien on the goods, and gave the plaintiff his note for that amount. Subsequently Taylor assigned his judgment and his interest in the agree-

ment of the defendant to pay the same to the plaintiff. This action is brought upon the agreement and the note.

The defendant's counsel contends that the agreement was one to prevent or suppress competition at a public sale, and was therefore against public policy and void. The general rule is that agreements which, in their necessary operation upon the parties to them, tend to restrain their natural rivalry and competition, and thus to result in the disadvantage of the public or of third parties, are against the principles of sound public policy, and are void. (*Atcheson* v. *Mallon*, 43 N. Y., 147, per FOLGER, J.; *Jones* v. *Caswell*, 3 Johns. Cases, 29; *Doolin* v. *Ward*, 6 Johns., 194; *Wilbur* v. *How*, 8 id., 444; *Thompson* v. *Davies*, 13 id., 112; *Meech* v. *Bennett*, Hill & Den., 191; *Brackett* v. *Wyman*, 48 N. Y., 667.) But there are cases holding that the fact that an agreement has the effect to prevent competition at a public sale does not necessarily render the agreement void; it depends on the intent. Thus, in *Phippen* v. *Stickney* (3 Metc., 384), it was held that an agreement by two or more persons that one of them only will bid at an auction of property, and will become the purchaser for the benefit of them all, is illegal, if it be made for the purpose of preventing competition at the bidding and depreciating the price of the property below the fair market value. *Aliter*, if the purpose of the agreement be to enable each of the parties to become a purchaser, when he desires a part of the property offered for sale, and not the whole; or if the agreement be for any other honest and reasonable purpose. That case was approved and followed in *Marsh* v. *Russell* (66 N. Y., 288), in which it was held that the members of a partnership formed for the purpose of carrying on the business of furnishing recruits during the war of the rebellion had the right to agree, in their articles of copartnership, that they would not come in competition with each other, or furnish recruits for less than a price fixed, and that such an agreement can only be condemned on proof that it was made as part of a conspiracy to control prices or create a monopoly, and so against public policy, or that it was made for some other unlawful purpose. The cases of *Doolin* v. *Ward*, *Atcheson* v. *Mallon*, and several others of like holding, were distinguished. In the later case of *Marie* v. *Garrison* (83 N. Y., 14), the case of *Phippen* and that of *Marsh* (*supra*) were cited approv-

ingly, and it was said by ANDREWS, Ch. J., speaking for the court, that "the mere fact that an arrangement fairly entered into, with honest motives, for the preservation of existing rights and property, may incidentally restrict competition at a public or judicial sale, does not, we think, render the arrangement illegal. The question of intent, at all events, is one for the jury, upon the whole facts as they shall appear on the trial." (P. 28.)

The doctrine deducible from the case of *Phippen* and the others above cited in which it is approved and followed, seems to be that an agreement made by parties, one or more of whom has a lien upon, or an interest in, the property about to be disposed of at a public or judicial sale, is not against public policy, because it has the effect to prevent competition at such sale, provided it was made, not with the intent of producing that effect, but was fairly made to protect the lien or interest of the parties, or for any other reasonable and lawful purpose. It is somewhat difficult to reconcile that doctrine with some of the earlier cases, and especially with *Thompson* v. *Davies (supra)*. In that case, A. and B. having executions against C., of which A.'s was the elder lien, and C. being indebted to D., it was agreed between A. and D. that A. should pay D. $225; that at the sale under the executions A. should bid off the personal property of C. to the amount of his execution, and that D. should bid off the real property of C. to the amount of B.'s execution, should dispose of the same, and after satisfying his own demands against C., should refund A. the said sum of $225. A. and D., at the sale bid off the propertry of C. in conformity to the agreement, and D. disposed of the real estate, and after satisfying his own demands against C. there was a sufficient surplus to repay A., and A. sued to recover it. The agreement was held void as tending to prevent competition at the sale. SPENCER, J., delivering the opinion of the court, said: "Whatever may have been the motives of the parties in making the agreement, and however upright their intentions, the question recurs, is not the promise made by the defendant void, as contravening established principles of public policy? If the consideration be ever so meritorious, yet, if the act agreed to be done, and which forms the basis of the agreement, be unlawful, the promise cannot be enforced in a court of law." * * * "The abstaining from bidding, upon concert

and by agreement, under the promise of a benefit for thus abstaining, is the very evil the law intends to repress." * * * " The principle is of too salutary a nature to permit any refinements which go to sap or pervert it." Now, in that case, a jury might have said that the only object of the parties in making the arrangement was to collect their respective demands against C. out of his property; yet, in the judgment of the court, that purpose, if it had existed and had been the only purpose, would not have made the agreement valid. The later cases, above cited, from the sixty-sixth and eighty-third of the New York Reports, as we understand them, have essentially modified that doctrine, and we must follow them if they are applicable to the case in hand.

The testimony given at the trial under review showed that each of the parties to the agreement had an interest in the property about to be sold, and the agreement had the effect to vest in the defendant the title to the property, freed from the liens of the plaintiff and Taylor, the defendant promising to pay their judgments. It was an agreement that one should purchase for the benefit of all, as effectually as if it had been arranged that each should share directly in the title. The case seems to us to be squarely within the rule laid down in *Marsh* v. *Russell* and *Marie* v. *Garrison*, and as the question of intent was fairly submitted to the jury there is nothing in this branch of the case to disturb the verdict.

The agreement of the plaintiff and Taylor not to bid was a sufficient consideration for the defendant's promise. (*Jones* v. *Caswell, supra; Thompson* v. *Davies, supra.*)

The court did not err in refusing to charge that the agreement was void by the statute of frauds. The defendant was not in a position to avail himself of the statute, he not having pleaded it as a defense to the agreement which was set out in the complaint. (*Porter* v. *Wormser,* 94 N. Y., 431.; *per* ANDREWS, J., 450.) But the case is not within the statute, for the reason that the defendant's promise to pay the debt of the judgment debtor was founded upon a new consideration, to wit, the promise of the plaintiff and Taylor above stated. (*Leonard* v. *Vredenburgh,* 8 Johns., 29, 39; *Prime* v. *Koehler,* 77 N. Y., 91; *Milk* v. *Rich,* 15 Hun, 178; S. C. affirmed, 80 N. Y., 269.)

An exception was taken to the ruling of the court sustaining an objection to a question put to the witness Ferris, an attorney of this court, calling for a communication made to him by the plaintiff. The objection was put upon the ground that the communication was privileged. Mr. Ferris testified that he was the attorney of record in the judgments in favor of the plaintiff, the defendant and Taylor against Dorman. He had a talk with his clients shortly before the sale in May, 1876. In the fall of 1877 he wrote to the plaintiff to come and pay his costs, and on his coming he had the conversation with him which the defendant's counsel sought to prove. The witness testified that he asked the plaintiff why he, the defendant, and Taylor did not buy the goods as it was talked when witness was there. The defendant sought to prove what answer the plaintiff made to that question. He also offered to prove what the plaintiff said on the subject of getting his pay from the judgment debtor, and as to whether he had any security for the payment of his judgment other than the obligation of the judgment debtor. These several offers were excluded. The witness when asked as to whether he talked with the plaintiff as counsel, on the occasion to which the questions referred, answered, "I don't know what you might call it." We think there was no error in the rulings. The communications called for were in regard to what the plaintiff had done about a matter in respect to which he had taken the witness' advice; they related to the subject in respect to which the previously existing relation of attorney and client was formed, and the occasion of making them arose out of such relation. It may fairly be said that the communications were induced by the fact of such relationship, and consequently were privileged. (*Bacon* v. *Frisbie*, 80 N. Y., 394.)

These views lead to the conclusion that the motion for a new trial should be denied and judgment ordered for the plaintiff on the verdict.

BARKER and HAIGHT, JJ., concurred; BRADLEY, J., not sitting.

New trial denied and judgment ordered for the plaintiff on the verdict.