(53 Misc. Rep. 59)

## JONES v. McNALLY.

(Supreme Court, Special Term, Saratoga County. February, 1907.)

1. JOINT ADVENTURE—ACTION BETWEEN PARTIES.

In an action on a contract constituting the parties thereto joint undertakers in a joint venture, the profits and losses to be borne equally, with the right of either one to call for an accounting, which contract contemplates both the holding and sale of stock, where the complaint fails to allege a cause of action for an accounting or for contribution, the facts may be regarded as sufficient to constitute a cause of action for terminating the joint engagement; but, where the prayer for relief is for a sum of money only, the complaint does not state facts sufficient to constitute a cause of action for an accounting and for contribution.

2. SAME—ACTION FOR DEBT.

Where a contract constitutes the parties joint undertakers in a joint venture, with a promise to share in the profits and the losses, an action of debt cannot be brought thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Joint Adventures, § 7.]

Action by Lewis M. Jones against Thomas J. McNally. On demurrer to complaint. Sustained.

Walter H. Cogan (J. L. Henning, of counsel), for plaintiff.
Rockwood & Salisbury, for defendant.

SPENCER, J. The rule which obtains (Marie v. Garrison, 83 N. Y. 14), that the court must indulge all reasonable inferences in support of a pleading, may have its place when the question is first raised after answer, reply, or trial; but, when applied in motions to make definite and certain or for bills of particulars, or upon demurrer, it is both illogical and absurd. In such instances it is not unfair to impose upon the pleader the burden of making his pleading clear and definite by express allegations. But the rule, as firmly established in our practice, puts the hazard upon the pleader's opponent to go to trial with scant knowledge of the cause of action or defense alleged against him, or assume the risks of motions and demurrers. In seeking such relief by motion, he is likely to find himself floundering between Scylla and Charybdis; and, on demurrer, he may never anticipate what inferences the court may make in order to sustain the pleading. As there are no well-defined limits within which inferences must be confined, and as few men, much less judges, draw the same inferences from the same facts, the operation of the rule has occasioned the practical annihilation of the science of pleading in this state and degraded the practice of the law in this matter to the uncertainties of a game of shuffle-board.

The complaint now before the court is a fair example of what may be accomplished with reasonable safety under this system. I think I may say, without unkindness, that the pleader had no clear or distinct idea of any particular cause of action. Indeed, the situation was one likely to puzzle the most astute pleader. Hence he has alleged all kinds of facts, material and immaterial, and left the defendant to the hazard of making necessary distinctions. The effort has been so far successful, for the defendant in his brief seems bewildered as to whether he has been sued for a revision of a contract, for fraud in making false representations, as a partner for contribution, or in assumpsit for debt. In the language of a recent decision, the complaint foreshadows them all, and, on demurrer, the court must cast about among the facts, and draw all inferences that may be fairly drawn, and, from the compost so constituted, spell out, if possible, any one of the various causes of action known to the law. It would thus seem that the law is more tender toward an ineffectual pleading than to anything else.

But it will not be necessary to discuss all the various causes of action foreshadowed by this complaint. It will be safe to assume that, if it does not state a cause of action by one member of a joint undertaking against another for contribution, or a cause of action for debt, it will not support any cause of action whatever. As touching a cause of action, for contribution, the complaint sets forth a contract between the defendant and the plaintiff's assignor in the following terms:

"We have mutually agreed that of the total amount of the La Chivie mining stock received by the said Mr. Pratt for the Algonquin, Aladora, and the Edna properties in Saratoga Springs, for which was paid net $2.50 per share, that any loss sustained by the said Mr. Pratt shall be shared jointly and equally between the two parties aforesaid; also any profits derived therefrom in advance of $2.50 per share shall also be divided equally between the two parties."

The pleader has not attempted to construe this contract by any allegation as to its legal effect. Therefore it is the contract itself from which the plaintiff's right of action must be inferred. It clearly constituted the parties joint undertakers in the stock venture. They were to share equally in the profits and losses. Each party had the right to call the other to account—the one as to losses sustained, and the other as to the profits derived; and, although the complaint fails thus to allege, I think it might well be inferred from the other allegations and the facts regarded as sufficient to constitute a cause of action for terminating the joint engagement, for an accounting of the profits and losses, and for contribution. But the plaintiff has not demanded such a judgment. The prayer for relief is for a sum of money only, as in debt, and such a judgment the plaintiff cannot take on failure to answer. The complaint is, therefore, insufficient to support a cause of action for accounting and contribution.

The next question is whether the complaint will sustain a cause of action for debt in accordance with the prayer. But debt cannot be predicated from the contract. The promise is to share in profits and losses. Debt must be predicated, if at all, upon an implied promise to pay the loss sustained. But, before such a promise may be inferred, there must be conceded facts of loss and its amount. The facts alleged

and from which such implied promise is said to spring are the joint undertaking concerning the stock, the agreement to share equally in the profits and losses, and that stock has proved worthless. It may be true that, if plaintiff had alleged a sale of the stock at a figure below $2.50 per share, a promise might be implied that the defendant would pay him one-half the difference between the fixed value and the rate obtained on the sale, as the loss might then possibly be determined by computation. But may an allegation of worthlessness stand in lieu of an actual sale to support such a promise? The defendant by his demurrer concedes only what is alleged, and for the purposes of this decision it must be taken as true that the stock is worthless and that plaintiff has been unable to sell the same at any price whatever. This being so, may we infer from the contract and these facts a promise by defendant to pay to the plaintiff, or his assignor, a sum equal to half of stock at the fixed valuation? I think there can be no doubt as to the answer to that question.

It is clear from the contract that the parties contemplated both the holding and sale of the stock. Their corresponding rights and obligations have concern with profits and losses resulting in the usual manner, either by use or sale. The term of use is not fixed. The manner or time of sale is not mentioned. They both had rights concerning either. As between themselves they were technically copartners. There is no claim that the defendant had knowledge of the worthlessness of the stock, or any fact from which it may be inferred that he is not entitled to the usual rights of a joint undertaker. The expression "sustained" and "derived," employed with reference to losses and profits, indicate that the parties contemplated the determination of such losses and profits by actual transactions or adjustments, and not by a mere allegation of worthlessness. So long as the title to the stock remains with the plaintiff or the parties under the contract, its value is not definitely determined nor can profits or losses be said to have resulted. It may be worthless to-day and of great value to-morrow. The contract does not contemplate any right in the plaintiff to select a day to determine its value and impose liability upon defendant for the difference between that value and the value fixed by the contract. It was not his agreement to maintain the market value of the stock at or above $2.50 per share. If it were, then defendant might, if the price advanced, sue for the difference as profits without a sale. To infer a promise on the part of either to pay such difference as the profit or loss upon a mere affirmation of the appreciation of the market or the worthlessness of the stock would be to do violence to the terms of the contract and enable the parties to recover in actions at law the relief they should seek in a court of equity. I am therefore of the opinion that the complaint does not set forth facts sufficient to constitute an action for debt.

As there seems to be no occasion to search for any other form of action, it follows that the complaint does not contain facts sufficient to support any cause of action, and therefore the demurrer is sustained, with costs; the plaintiff to plead over on usual terms.

Ordered accordingly.