Gray, J.
I do not think that this contract is one which, under all the circumstances, it would be equitable to enforce. It is a rule, well settled by the cases, that the specific performance of a contract for the sale of lands will not be decreed if the remedy be not natural, or where one party only is bound by the agreement. Chancellor Kent, in asserting that principle, in Benedict v. Lynch, 1 John. Ch. 370. referred to the decision of Lord Redesdale in Lawrenson v. Butler, 1 Sch. & L. 13; a case where the bill prayed a specific performance of an agreement to execute a lease of lands. The defendant entered into an agreement with the plaintiff for the lease of certain property; but it was necessary, in order to its validity, that certain trustees, who held the lands upon the trusts during defendant’s life, should give their consent; and they refused to do so. Lord Redesdale refused to decree specific performance, on the ground, substantially, that one party only was bound by the agreement, viz.: the plaintiff, as the defendant could not have executed the lease in compliance with the agreement.
In the course of his opinion he observes: I have no conception that a court of equity ought to decree a specific performance in a case where nothing has been done in pursuance of the agreement; except where both parties have by the agreement a right to compel a specific performance according to the advantage which it might be suppose they were to derive from it. Again he observes: It is said that courts 'of equity have decreed performance in cases where one party only was bound by the agreement. I believe it would be difficult to find a case where that has been done, particularly a late case. I am aware of the criticism to which Lord Redesdale’s opinion has been subjected, and, though I should prefer his views (as Chancellor Kent said he did, in Clason v. Bailey, 14 Johns, at page 489), I have no intention of using it as authority; except as illustrative of the general rule. In the cases *294 of agreements for the sale of land signed only by the party to be charged, it must be regarded as overruled by later decisions.
In the cases of contracts relating to the sale of real property, courts certainly have been stricter in enforcing their performance upon the application of the vendee, and it has not unfrequently happened that where he has been in ignorance of the defect in the vendor’s'title, or where the vendor has represented his interest as being greater than it was, his claim that there should be conveyed to him whatever that interest was has been sustained. Under such circumstances thei’e does not appear to be any good reason .why the vendee should not compel the vendor to perform, so far as he is able to, and to make compensation for the deficiency. See Adams’ Equity, *90; Sugden on Vendors, 193. In Mortlock v. Butter, 10 Ves. Jr., 292, Lord Chancellor Eldon observed:
“ I also agree, if a man, having partial interests in an estate,' chooses to enter into a contract representing it, and agreeing to sell it, as his own, it is competent to him to afterwards say; though he has valuable interests,' he has not the entirety ; and therefore the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances is bound by the assertion in his contract, and if the vendee chooses to take as much as he can have, he has a right to that, and to an abatement; and the court will not hear the objection by the vendor that the purchaser cannot have the whole. But that always turns upon this; that it is, and intended to be, the contract of the vendor.”
Thei’e is no doubt about the rule that where the vendor has by his agreement undertaken to convey an estate in’ lands, in which he has a partial interest, and the vendee is in ignorance of that fact, the latter is entitled to insist upon the former conveying to him what interest he has. Wood v. Griffith, 1 Wils. Ch. 44; Pratt v. Law, 9 Cranch, 456; Waters v. Travis, 9 John. R. 450, 465. That is not this case, and none of the cases to which respondent directs our attention are analogus in their facts and in the circumstances which influenced the decree. In Dyas v. Cruise, 2 Jones and La Touche, 560, the plaintiff in the action for a specific performance of a contract to lease had, on the faith of it, during the first year of his term, expended a large sum of money in lasting improvements, and Lord Sugden said he should have held, ‘ if it had been necessary to decide the point, that Mr. Dyas was entitled to a decree for partial performance of the contract’ The defendant, Cruise, was tenant for life of one undivided moiety of the estate; having with his co-tenant power to lease for a -term of thirty-one years, and the case was decided on the ground that the contract was a valid one. and did not involve a decision of the present question. In Hooper v. Smart, L. R. (18 Eq.) 683, the vendor agreed to sell the entirety of certain freehold property and the purchaser went into possession. Because of delays in completing the transaction of sale, he brought the action for a specific performance It transpired that a good title to the entirety could not be made; a moiety being in other parties. The vice-chancellor decreed specific performance as to the undivided moiety and an *295 abate'ment of one-half the price. He rested his decision on the authority of Castle v. Wilkinson, L. R (5 Ch. D.) 584; where the chancellor held ‘that where a man proposes to convey the whole of an estate, as owner of the fee simple,’ and it turns out that he is only seized pur autre vie, and that his wife has the remainder, there the court can insist on his making good his contract to the extent to which he is able to make it good; and he must submit to an abatement of the consideration to be paid, for what he improperly alleged he was capable of selling.'• In Barker v. Cox, L. R. (4 Ch. App.) 469, there was an engagement by the vendor, who also had a reversionary interest in the estate, that all parties would concur in conveying. In Barnes v. Wood, L. R. (8 Eq.), 424, the decree for a specific performance was expressly placed upon the ground that the vendor represented himself to be the owner of the fee, when, in fact, having only a limited interest; of which the purchaser was ignorant when he entered into the contract. It was held that the vendor was bound to convey all the interest he had. In Bostwick v. Beach, 103 N. Y. 414; 3 St. Rep. 659, the executors contracted to sell their testator’s farm, under a power of sale, and there was an outstanding dower right. It was held that the widow by joining in the contract consented to look to the purchase money, as a substitute for the land, for her dower right therein, and she could be decreed to release her dower, on payment of its gross value.
But in this case there was no misrepresentation, nor improper conduct, on the part of Mrs. Gould. She did not represent that she could not convey, nor did she - undertake that she would convey, her brother’s interest. Palmer, as well as Barker, knew the nature of the ownership; a fact of which the contract, on its face, informed the former. The transaction, in all its appearances, was one for the proposed conveyance of interests held by the tenants in common.
There is a clear distinction between the case where a party, in ■agreeing to sell land to another, represents or asserts his estate, or interest in it, to be other or greater, than it is, and the present case where Mrs. Gould represented nothing that was untrue with respect to her attitude towards the property, except, possibly, regarding only the face of the instrument, that she had capacity to .agree for her brother's interest. Her representation to that effect was, of course, nor in fact made; nor was it understood by Barker to have been made. But assuming, for the purposes of the present discussion, that upon face of the contract such a representation seemed -to be made by Mrs. Gould, in signing as attorney for her brother, it is clear that the distinction between such a case and the cases to which reference has been made, where a party had been compelled to convey what intérest he had in the property, rests in this, that, in the latter, there is assertion with respect to the title, or interest, of the party in the property, which furnishes a ground for equity to say that he must convey to the extent that he can, when the other party insists upon the agreement; whereas, in the case assumed, there would be, at most, only a possible decep *296 tion practiced with respect to the’ ability of the party to bind & part owner in the transaction of sale. In such case, however, the party contracted with is informed of the necessity of the concurrence of the other owner and is put upon notice, as to the extent of the agency of the party with whom he is negotiating. It is conceiviable that an action at law might lie in such a case for damages, by reason of the deceit practiced, or the misrepresentation made by one owner respecting his power to represent the other. The saíne ground, -upon which equity proceeds in decreeing specific performance in the former class of cases, is not found in the present case; because, as I have before suggested, there has been here no proposition by Mrs. Grould to convey the whole-estate as its owner; no false assertion of title; nor any engagement.by her that her brother would concur in the conveyance. In my opinion, this is a case which aptly illustrates the rules that the' mutuality of the remedy, upon which rests the right to the specfic performance of a contract, depends upon the contract being enforcible by both parties. Under such a rule, it must be perfectly clear from the contract, that either party could compel a specific performance as against the other. Mr. Pomeroy, in his work on Contracts (sec. 162), relying on many cases which he cites, says : “ If, therefore, from the nature or form of the contract itself, from the relations of the parties, from the personal incapacity of one of them, or from any other cause the argreement devolves no obligation at all upon one of the parties, or if it cannot be specifically enforced against him,- then and for that reason, be is not, in general, entitled to the remedy of a specific performance against his adversary party; although otherwise there may be no obstacle arising, either from the terms of the contract, or from his personal statu» and relations, to an enforcement of the relief against the latter individually.” Vice-Chancellor Leach, in Adderley v. Dixon, 1 Sim. & Stu. 611, observed : ‘It has-been settled by repeated decisions that the remedy in equity must be mutual, and that where-a bill will lie for the purchaser, it will also lie for the vendor.’’ Phillips v. Berger, 8 Barb. 527. If it should be suggested, an answer to the application of this equitable rule that mutuality must, exist in the remedy to authorize a decree of specific performance,, that it was competent for Palmer to waive the want of mutuality ánd therefore, the case is similar to one where the agreement though only signed by the one party may, neverthless, be enforced against him by the other I should reply that such a case is an apparent exception to the rule which requires the contract to be mutually-binding when entered into. See Fry on Specific Performance, sec. 449, and cases cited, ft does not prevent the application of the rule to a case like the present one. With respect to the case-, suggested, as it was said by Pltjmer. M. R, in Martin v. Mitchell, 2 Jac. & W. *427, ‘It is considered that when the party files the bill he does an act that will bind him, and that from that time there is mutuality.’ That is to say; in the case of a memorandum agreement, which is signed only by the party to be charged, it i» not er.forcible by him against the other party, who has not signed it;' but, by the filing of a bill for specific performance, the other *297 party lias waived the original want of mutuality. But' in the present case there was originally a contract, which was signed by Palmer and by Mrs. Gould, individually and as attorney for her brother, and apparently a valid agreement, and the question of the mutuality of the remedy upon it, as between them, was determinable upon the event of what the absent party would do about the ‘ proposed agreement made for him to sell. As the contract contemplated and called for a conveyance • of both interests in the property, the purchaser, Palmer, would not be bound to accept less, in the event of the refusal by the brother to concur in the sale. Thus there, arose the conditions suggested by the contract and which made it unenforcible against the intending purchaser. It would be unjust to hold that it was open to him to waive; when the contract in its nature might be regarded as dependent upon a subsequent event. In the other class of cases, under the statute of frauds, the statute interposes and there is no binding agreement by the party purchasing at all, until, by the institution of his action to enforce the agreement, he makes himself a party to the transaction and makes the agreement a mutual one. In the one case, the question of mutuality turns upon the nature and conditions of the contract of the parties. In the other, there is no contract as to one, until he does an act which is deemed to make him a party to it. ■
Applying these general principles to the case at bar, it appears to me that there is lacking that mutuality in the equitable remedy, which is so essential to the right to a specific performance of the contract. Reversing the positions of the parties, can it be said that the appellant, Mrs. Gould, could have enforced this contract against Palmer, if he .had elected not to be bound by it ? The contract calls for the conveyance by Mrs. Gould and her brother, Mr. Bowen, of the whole property, as the owners in common of it, by a good and sufficient warranty deed. It was a contract for the sale of the interests of both owners. It would have been competent for him to refuse to complete the contract as to Mrs. Gould’s undivided .interest, after Mr. Bowen had refused to complete the-contract on his part. He could say that what he agreed to buy was not a partial interest, but the whole, and that he refused to-accept less. Under these circumstances, it would be inequitable to decree a performance at his suit; for there was an inequality of obligation between the parties. If the vendee was at liberty to enforce, or to avoid the contract, according as his interests might incline him, tlip rule of mutuality, to which allusion has been made, would be violated.
Nor does it, in my opinion, alter the case that it was provided in the contract that the agreement should be binding upon the parties of the first part, jointly and severally. I do not see how that provision disposes of the objection of the want of mutuality in the contract. If by that provision it was meant to say that, irrespective of whether Mrs. Gould’s brother should approve' of the contract and join in the conveyance, it should be binding upon her to the extent of her interest, if it was demanded Mm *298 Palmer, then it would be as if he had made with each owner a .several contract, which he.would be at liberty to enforce separately, if performance was refused, and which each might insist upon his performing. That was not the character nor the purpose -of this agreement. I do not think that Mr. Palmer would have been precluded from saying, if Mrs. Gould had insisted upon his purchasing her interest alone, that the contract which he made was to purchase the entire tract of land and that he was unwilling to take only a partial interest in it. Again, it is to be observed that the inquality of the obligations upon the parties to this contract becomes apparent, when we consider the .existence of the ■provision, inserted in the contract by Barker, who was Mrs. Gould’s -adviser, that it should bind her and her brother, severally and jointly. Were they to be bound, each in all events, and Palmer .at his election ? In Attorney General v. Day, 1 Ves. Sen. 218, where a purchase of lands for the benefit "of a charity, established under a will, was sought to be enforced on behalf of the charity, Lord Chancellor Hardwicks said there were reasons why it can-mot be executed entirely, and then not at all. By reason of the •death of a tenant in tail, his part had gone over to his issue in tail, ¡against whom, as it appears, the court could not decree. The •chancellor observed: It is admitted that if the bill was on the -other side by the present defendant, or surviving tenant in common, for an executiomas to a moiety, the court would not execute it against the purchaser; because it is different from what was contracted for; as his meaning might be to have the entire estate, .and the court pretends to decree in specie only, which the decreeing half would not be. He did subsequently remark upon a -difference existing between the case of a private person and of .■a charity; though he refused to express an absolute opinion as to whether it would make a difference in the the legal result. But it is immaterial to this case what the lord chancellor’s opinion was; because there it was founded upon the fact of a contract of sale made by both of the tenants in common. In Horrocks v. Rigby, L. R (9 Ch. D.) 180, it is true, Lord Hardwicke’s opinion in .Attorney-General v. Day, was referred to by Justice Fry ; but there again the difficulty was, not that of the two parties, contracting to sell as common tenants of the property, one refused to convey, but that one was found to have no good title. The defend■ant there, it seems, was unwilling to convey his moiety; because, bv reason of the existing mortgage covering his half, he would ..actually receive nothing, as is said in his counsel’s point. It •,-seems to me very clear that if the court may decree specific performance on the part of Mrs. Gould, it will be compelling her to perform a contract which she never intended to make. The ■only contract which she in reality entered into was one in which her brother was to join. In view of their harmonious relations, with his letter in her possession; declining to sell and ■adVising her against selling, it cannot be supposed that she intended 'to sell out her interest and to leave her brother a co-tenant with a stranger. Her denial of the intention is explicit ¡and is borne out by every circumstance and presumption ; which, *299 in my opinion, the clause making the obligation a several and joint one is insufficient to overcome. The case of Price v. Griffith, 1 De Gex, Macn. and Gordon, 80, is. not unlike the present case ; though the subject of the contract of sale there was a colliery, belonging to two persons in undivided moieties. The bill alleged the contract was binding on both; but prayed relief, in the alternative, against one. The bill had been dismissed against one •owner by consent of plaintiff for inability to prove a concurrence in the proposal to sell, and the appeal concerned the other owner. Justice Knight Bruce said : ‘But the owner of the other share never meant to contract for one share alone. If he intended to contract at all, he intended to contract for a lease of the whole colliery. Cases may be conceived where a person, who has contracted for more than it is in his power to convey, •ought to be decreed to convey what he can, either with or without ■compensation, to the vendee for such part of the subject-matter of the contract as the vendor is unable to convey. But a lease of an undivided moiety of a colliery is a very different thing from' a lease of a whole colliery; and in this case there is no evidence of the improper conduct, or misrepresentation, or of the defendant "Griffith having held himself out as capable of contracting for the latter, or in fact, any other circumstance constituting a ground for ■a decree as to one undivided share alone.’
The question is one of interest and of legal importance, and the conclusion at which I have arrived is, that, under all the circumstances, it would be contrary to equity to decree a specific performance by Mrs. Gould and that it would be much better to leave the respondent, Mr. Palmer, to his action at law, for what ■damage he may be able to show he had sustained, by reason of what Mrs. Gould has done, or has refused to do.
While I think the foregoing considerations are of sufficient weight to dispose of this case adversely to the plaintiff’s claim for a specific performance of the contract, there is another ground upon which the appellant must prevail. The conflict of evidence may have justified the court in refusing to find that any condition was attached to the delivery of the contract; but the proofs fully warranted the defendant’s (Mrs. Gould’s) request of the trial court to find, that at the time of the execution of said agreement, and’ during the negotiations preceding the same, said Barker was secretly, and without the knowledge or assent of the defendant G-ould, acting as attorney or agent for the plaintiff, charged with the duty of purchasing the real property described in the complaint. The court found that Barker had been for several years prior to February the general counsel and professional adviser of Mrs. ,Gould and acted as her attorney in all the matters connected with the execution of the- agreement in question, and that she relied upon his good faith and professional advice. The evidence, however, did not show that he conducted himself towards her, as •she was justified in assuming that he would, in view of their relations. After the Ely proposal was rejected, under Barker’s advice, he did not see Mrs. Gould again until the day before this •sontract was drawn; but, during that interval of time, he was with *300 Palmer and he was acting under his instructions when he called again upon Mrs. Gould to propose a sale of her property. He had informed Palmer of the objections made to Ely’s proposal, because of the mode of payment in a trade o£ lands, and he went to Mrs. Gould with a proposition from Palmer, involving a part payment in cash and part in his bond secured by mortgage upon-the land and with suggestions as to a release of the mortgage lien,, in case of sales of lots. He was acting in Palmer’s interest and yet, when seeking again the client who had advised with him, he-did not disclose to her his relations with Palmer and that they had arranged terms for the purchase of the property. Good faith required of him to state his. attitude with respect to the party proposing to purchase. It was not consistent with that good faith that he should suppress a knowledge of what had occurred, intermediate the time of their previous consultations and his call upon the afternoon before that day, when, by his request, Mrs. Gould called at his office to execute a contract of sale. For him to precipitate his client, Mrs. Gould, into a contract that morning with a party, whose name was then first revealed to her and at whose instance he endeavored to secure a contract of sale of so one sided a nature in its provisions, was conduct meriting not only disapprobation; but'which should render his testimony subject to-disbelief, when in conflict with Mrs. Gould’s. Enough is apparent, in the testimony which he gave, to show that he was playing a double part in the transaction. I think the evidence justified the appellant in making the request of the court tó find, which I have mentipned, and the refusal was an error, which certainly calls for a reversal of the judgment which the plaintiff recovered.
Upon the grounds which have been discussed, I am of the opinion that the judgment should be reserved and that a judgment should be entered for the appellant dismissing the complaint; but, as my associates place their concurrence upon the last ground, there must be a reversal of the judgment appealed from and a new trial must be ordered; with costs to abide the event. ■
All concur upon the last ground of the opinion, relating to the-refusal to find as to Barker’s secretly acting for the plaintiff.
Judgment reversed.