CARNEY v. PENDLETON et al.

(Supreme Court, Appellate Division, Second Department. June 10, 1910.)

1. SPECIFIC PERFORMANCE (§§ 6, 32*)—CONTRACT—REQUISITES—MUTUALITY.
    To warrant a decree of specific performance, the contract must be mutual in its obligation, and also in its remedy.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11, 89–99; Dec. Dig. §§ 6, 32.*]

2. SPECIFIC PERFORMANCE (§ 32*)—LEASE—OBJECTION TO SALE—ENFORCEMENT.
    Where complainant went into possession of certain real property under a lease requiring her to make alterations, and another instrument contemporaneously executed provided that she should have the option to purchase the premises for a specified price within three years, on demand of a deed and payment of the price, such option was mutual, and enforceable as against interim grantees with notice.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89–99; Dec. Dig. § 32.*]

Appeal from Special Term, Richmond County.

Action by Marie J. Carney against Rebecca E. Pendleton and others. From a judgment dismissing the complaint on the merits, complainant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, BURR, CARR, and RICH, JJ.

John F. Stricker (Hersey Egginton, on the brief), for appellant.
John J. Kenney, for respondents.

BURR, J. Plaintiff appeals from a judgment entered upon an order, made at the commencement of the trial of this action, which granted defendants' motion to dismiss the complaint. The motion was made "upon the pleadings." As the answer contained no defense by way of counterclaim, the question really is whether the complaint stated facts which entitled plaintiff to the relief prayed for.

It appears that on July 30, 1906, defendant Rebecca E. Pendleton, then being the owner of the premises described in the complaint, executed and delivered to plaintiff a lease thereof for the term of seven years from the 1st day of October, 1906. At the same time, and as a part of the same transaction, the said defendant executed and delivered to plaintiff another written instrument, by which she gave to her the option to purchase said premises for $5,000, and agreed, at any time within three years from October 1, 1906, upon demand and the receipt of the purchase price, to deliver to plaintiff a deed vesting in her the fee of said premises, free and clear of all incumbrances. Plaintiff went into possession of said premises, and has ever since remained in possession thereof, and has paid the rent reserved by said lease. The lease and agreement to sell were duly recorded. Subsequently thereto, and with notice of both said instruments and of plaintiff's rights thereunder, defendants John J. Kenney, William B. Kenney, and Henry P. Morrison purchased the property, and plaintiff has attorned to them and paid the stipulated rent, which they have accepted. Within the time named in the said agreement, plaintiff noti-

fied each of defendants of her determination to accept the option contained therein, tendered the purchase price, and demanded a deed of the said premises, which was refused. Thereupon this action was brought for specific performance and to compel the delivery thereof.

The learned trial court dismissed the complaint, upon the ground that plaintiff was not entitled to a specific performance of the agreement to sell. In this we think the court erred. It is undoubtedly the general rule that to warrant a decree for specific performance the contract must be mutual in its obligations and in its remedy. 4 Pom. Eq. Jur. (3d Ed.) § 1405; Palmer v. Gould, 144 N. Y. 671, 39 N. E. 378; Stokes v. Stokes, 148 N. Y. 708, 43 N. E. 211. But it has been generally supposed that, where the owner of property for a consideration gave to another an agreement in writing, signed by him, to the effect that within a specified time he would sell such property, describing it, at a price named, and within such time the person to whom the agreement was given determined to avail himself of the offer, and so notified the maker thereof and demanded performance, such agreement became mutual and was enforceable. Jones v. Barnes, 105 App. Div. 287, 94 N. Y. Supp. 695; Pettibone v. Moore, 75 Hun, 461, 27 N. Y. Supp. 455; Boston & Maine Railroad v. Bartlett, 3 Cush. (Mass.) 224.

The learned counsel for the respondents claim, and the learned trial court seems to have held, that by two recent decisions of the Court of Appeals this well-established rule had been overthrown. Wadick v. Mace, 191 N. Y. 1, 83 N. E. 571; Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251. We do not so understand them. In Wadick v. Mace, supra, the decision was put upon the ground that it affirmatively appeared from the written instrument that the remedy of specific performance was expressly waived, and in Levin v. Dietz, supra, the decision was put upon the ground that there had been no acceptance of the vendor's promise to perform until after the promise had been withdrawn. But in the latter case the court seemed to recognize the rule above stated, and say that, where "the agreement sought to be enforced gave an option which the party seeking to enforce had expressly accepted within the term of its life, * * * under these circumstances * * * there was a 'binding agreement' or a 'completed bargain,' and that the written contract, although unilateral in form, could be enforced."

It cannot be claimed in this case that there was no consideration for the agreement to sell. As part of the same transaction with the giving of the option, and contemporaneously with it, a lease was given, which not only reserved a certain sum as rent for the land, but imposed upon the tenant the obligation to make alterations in and repairs to the buildings thereon. It may well be that the rent was increased in amount, and that the tenant was willing to make the alterations called for, in view of the fact that she could, within that portion of the term of the lease specified in the agreement, become the owner of the demised premises. There was, therefore, in this case, from the very inception of the transaction, not only a consideration for the vendor's promise to sell, but obligations imposed, both upon vendor and vendee, which carried with them remedies for the enforcement thereof. Such agreements have been frequently made; and the validity thereof

has been sustained. 1 McAdam on Landlord and Tenant (3d Ed.) 369, 373; Jones on Landlord and Tenant, § 387; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Hawralty v. Warren, 18 N. J. Eq. 124, 90 Am. Dec. 613; Knerr v. Bradley, 105 Pa. 190; Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur; CARR, J., in separate memorandum.

CARR, J. I concur with Mr. Justice BURR in his opinion that the judgment for the defendants on the pleadings should not have been granted. Under her complaint, the plaintiff might have shown that the option agreement and the lease were made and delivered as part of one and the same transaction. Actual notice of the option agreement on the part of the defendants is alleged. The case would then stand on the same basis as if the option agreement was contained in the lease itself. It is quite common to find such option agreements in leases. It would be going very far to hold that such agreements in leases are not enforceable in equity. If such is to be held, then the holding would be quite contrary to the common understanding of the parties. I think that the Court of Appeals, in its opinions in Wadick v. Mace, 191 N. Y. 1, 83 N. E. 571, and Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251, did not intend to declare that option agreements, in leases, at least, were beyond the protection of equity under proper circumstances.