(161 App. Div. 44)

### LOCKE v. TAYLOR et al.

(Supreme Court, Appellate Division, Fourth Department.   March 4, 1914.)

1. SUBSCRIPTIONS (§ 5*)—CONSIDERATION.

A subscription agreement to pay a sum to parties rebuilding a certain plant, being acted on, by the owners of the site and wreckage of the old plant rebuilding it, is supported by a consideration, making it a valid contract to pay them such sum.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 6, 7; Dec. Dig. § 5.*]

2. SUBSCRIPTIONS (§ 15*)—SECRET CONDITIONS.

The subscription paper not showing a subscription was made on condition of another equal subscription by certain other persons, such condition, not communicated to the persons for whose benefit the subscription was made, and who acted on it, may not be asserted in an action on the subscription.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 14–17; Dec. Dig. § 15.*]

3. EVIDENCE (§ 151*)—PAROL EVIDENCE—MEANING OF LANGUAGE.

While the meaning of the word "company," as used in a subscription agreement to pay to a "company to be organized" for building and equipping a plant, is properly left to the jury as a question of fact, a partnership and not a corporation being formed, testimony of a subscriber as to his understanding of its meaning when he signed is not material or competent thereon, in the absence of claim of fraud, misrepresentation, or mistake.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 440; Dec. Dig. § 151.*]

Appeal from Livingston County Court.

Action by Fred M. Locke against Vernon E. Taylor and another. From an order setting aside a verdict for plaintiff and granting a new trial, plaintiff appeals. Reversed, and verdict reinstated.

See, also, 154 App. Div. 918, 138 N. Y. Supp. 1126.

This action was brought to recover the sum of $200, with interest thereon, alleged to have been subscribed by the defendants, for the purpose of inducing the rebuilding and reconstruction of a manufacturing plant in the village of Lima, N. Y., which had a short time before the subscription was made been destroyed by fire.

Plaintiff was unable to produce the subscription paper, and secondary evidence of its contents was received. Though defendants, who are partners, admit that a subscription paper was signed by one of them in the name of both, the form and contents of the paper so signed was a matter of dispute in the testimony on the trial. Plaintiff gave testimony tending to show that it was in the following form: "We, the undersigned, agree to pay the sums set opposite our respective names to parties rebuilding the Lima Insulator plant, the same to become due and payable on an equal amount being expended on the rebuilding of the plant." On the other hand, the testimony given on behalf of the defendants tended to show that it read: "We, the undersigned, agree to pay the sums set opposite our respective names to a company to be organized for the purpose of building and equipping an insulator plant upon the premises in the town of Lima lately occupied by the Lima Insulator Company upon the conditions following: The said sums are to become due and payable when an amount equal to the amount subscribed shall have been expended on the erection of said plant."

Whatever may have been the exact language of this subscription paper, it was actively circulated by and in behalf of a citizens' committee appointed for that purpose at a public meeting of the citizens of that village, convened to consider ways and means to secure the rebuilding of the plant; and many subscriptions in varying amounts were secured, aggregating inclusive of defendants' subscription nearly $2,000. At this time plaintiff's wife was the owner of the site and wreckage of the old insulator plant, which she had purchased at a sale of the property by the trustee in bankruptcy of the corporation owning the plant at the time of the fire. The wife and son of plaintiff, then knowing that a subscription paper was to be prepared and circulated for the purpose therein indicated, began about that time the reconstruction and rebuilding of the plant, and thereafter expended in rebuilding the plant and equipping it with machinery upwards of $25,000. The interest of the wife and son in the subscription here in question was thereafter assigned by them to this plaintiff.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, and MERRELL, JJ.

George D. Peck, of Canandaigua, for appellant.

Charles D. Newton, of Geneseo, and George W. Atwell, of Lima, for respondents.

KRUSE, P. J. [1] The evidence warranted no other inference than that plaintiff's assignors rebuilt the insulator plant in the expectation of receiving the subscriptions made by these defendants and others, and to some extent at least in reliance thereon. The purpose for which the subscriptions were made, whichever may have been the true form of the subscription paper, was, primarily at least, to secure the reconstruction of the insulator plant. If it was in the form which plaintiff asserts without other limitation, then plaintiff, as the assignee of the right therein of the parties who actually rebuilt the plant, was

146 N.Y.S.—17

entitled to collect the subscription. The purpose of such a subscription agreement is to induce the parties who are or may become rightfully in the project of rebuilding to proceed with the enterprise. If acted upon by such parties, then the subscription agreement becomes an enforceable contract for their benefit. It is then no longer a naked promise to give or contribute a sum of money; but is, when thus acted upon, supported by a consideration sufficient to establish the agreement as a valid contract to pay the sum subscribed. Keuka College v. Ray, 167 N. Y. 96, 60 N. E. 325.

The learned trial judge in his charge to the jury submitted for their determination the question whether the subscription agreement was in the form as claimed by the plaintiff, or that asserted by defendants; further instructing them that, if they found it to have been as claimed by the former, plaintiff was entitled to a verdict; but, if they should find that defendants' version was correct, then they should further determine whether a company, within the meaning of that term as used therein, had been organized for the purpose of building and equipping the plant as therein expressed. It was conceded that no corporation had been formed for that purpose. But there was evidence that plaintiff's assignors had, while the reconstruction of the plant was proceeding, formed a partnership and were acting as partners in that business under the name of M. F. Locke Manufacturing Company. The jury was in effect further instructed that the words "company to be organized," as used in the subscription agreement, if found to be in the form claimed by defendants, were ambiguous, and might mean either a corporation or a partnership to be organized, dependent upon the understanding and intention of the parties as to the meaning of the words; and then left it to the jury to determine what the parties understood that expression to mean. If they should find that it was understood and intended that a corporation was to be organized for that purpose, then, as the court charged, plaintiff was not entitled to recover; but, if the partnership as formed met the understood requirements of the contract, then plaintiff was entitled to a verdict. Under the instructions of the court, to which no exceptions on the part of the defendants appear in the record, the verdict of the jury in plaintiff's favor seems to be supported by the evidence. Nor was the verdict disturbed by the trial court as being against the weight of the evidence.

[2] The single ground of reversal indicated in the opinion of the court was the exclusion of evidence offered by defendants to the effect that their subscription to the agreement as made was not to become effective and a valid subscription until another subscription by designated parties in an amount equal to defendants' subscription had been obtained. The exclusion of this evidence was considered by the trial judge as presenting error sufficient to require setting aside the verdict. It is to be observed that there is no suggestion that any such condition attached to defendants' subscription appeared either in the paper itself or in connection with defendants' signature thereto; nor is there any claim that either plaintiff or his assignors at any time down to the time the action was brought had any intimation of such a claim, or even that the fact that defendants' claim that their subscription was a condi-

tional one only had been called to the attention of any other subscriber to the paper. When the subscription was made by defendants without any condition appearing on the paper, or being in any way communicated to the parties for whose benefit it was ostensibly made, it became in effect an offer to pay the sum subscribed on compliance by those parties with the terms of the agreement. Acceptance of the contract on their part and their reliance thereon is shown by the fact that they thereafter continued the work of reconstruction of the plant with knowledge of the fact of defendants' subscription and its purpose.

Under the circumstances, defendants are estopped from now claiming that their subscription was to become effective as an actual subscription only in the event the condition, which it was sought by the excluded evidence to prove, was fulfilled. Such an oral, secret, collateral agreement is at variance with the terms of the writing and ineffectual. Phœnix Warehouse Co. v. Badger, 6 Hun, 293; Yonkers Gazette Co. v. Jones, 30 App. Div. 316, 51 N. Y. Supp. 973; Lyell Avenue Lumber Co. v. Lighthouse, 137 App. Div. 422, 121 N. Y. Supp. 802; Id., 151 App. Div. 902, 135 N. Y. Supp. 1124, affirmed 208 N. Y. 628, 102 N. E. 1106. It follows that this evidence was properly excluded.

[3] It is also urged that it was error to exclude the evidence as to defendant Finucane's understanding of what was meant by the word "company" as used in the subscription paper which he testifies he signed. While the meaning of that word as used in the subscription agreement was properly submitted to the jury as a question of fact for their determination in the event they should find defendants' version of the contract to be the true one, yet the witness' understanding of its meaning when he signed was not material or competent on that question; there being no allegation or claim that the signature was obtained by fraud or was made by reason of misconception or mistake.

The order should be reversed, with costs, and defendants' motion for a new trial denied, with $10 costs, the verdict of the jury reinstated, and judgment thereon entered for the plaintiff. All concur.