GEORGE H. SPITZLI, Plaintiff, *v.* FRANK B. GUTH and MARY M. GUTH, Defendants.

(Supreme Court, Oneida Special Term, July, 1920.)

**Lease — provisions of — specific performance — deeds — options.**

Plaintiff as lessee of defendants' premises for a term of years obtained an option from the defendants for the purchase of the property and improved the same. Thereafter the defendants attempted to revoke the option. *Held,* that as defendants knew both before and after they had given plaintiff an option to purchase that he had expended money for improve-

ments upon the premises in the expectation of his purchase of the premises, plaintiff was entitled to judgment in an action to compel defendants to execute and deliver to him a deed of the premises, though the option was not under seal.

ACTION for specific performance to compel the defendants to execute and deliver to the plaintiff a deed of a house and lot situated in the town of New Hartford, Oneida county.

Kernan & Kernan (Gay H. Brown, of counsel), for plaintiff.

Smith, Hayden & Setright (Ray B. Smith, of counsel), for defendants.

Ross, J. On and prior to February 20, 1918, the defendants were the owners as tenants by the entirety of a house and lot known as No. 806 Genesee street, New Hartford, N. Y., on which date a lease was entered into, by the terms of which the defendants leased the premises in question to the plaintiff for a rent agreed upon for the term of two years, which term was to commence on the 1st day of May, 1918. Said lease contained a provision in regard to the expense of making certain improvements and repairs on the said demised premises — that each of the parties thereto should stand one-half of the same, providing, however, that the liability of the lessors should not be more than $100; and it also contained a provision that, if the lessors should have a *bona fide* offer for the purchase of the property, the lessee, the plaintiff herein, should have the first opportunity to purchase the premises at the price so offered.

The plaintiff took possession of the premises about April 15, 1918, and it is the claim of the plaintiff that, from then on, at different times, he had conversations

with the defendants, or one of them, in regard to making further improvements upon the demised premises of a substantial character beyond those contemplated or mentioned in the aforesaid lease. These conversations are denied, at least to some extent, by the defendants.

On March 25, 1919, the plaintiff wrote a letter, of which the following is a copy, to the defendant, Mr. F. B. Guth, being plaintiff's exhibit No. 6:

" *March* 25, 1919

" Mr. F. B. Guth,
  " 213 Essex Street,
    " Syracuse, New York: .

" Dear Mr. Guth.— There is a strong movement on foot to annex to Utica that portion of the Town of New-Hartford lying north of the Sauquoit Creek, which would include your property.

" Inasmuch as I expect to purchase your property later, and as I am strongly in favor of this movement, I would ask you to kindly sign the enclosed letter of authority and re-mail it to me promptly in the enclosed stamped envelope.

" With kindest regards, I am
" Sincerely yours.
" P. S. Please have your wife sign also."

On direct examination, the plaintiff testified as to a conversation with the defendant, Mr. Guth: " I stated I would like to make further improvements and I would like an option on the property because I could not go ahead and make them unless I had an option." This was in April, about the time plaintiff moved into the house; and again: " I simply said I would have to have an option to protect myself on the expense I would be put to." At that time, in the judgment of the plaintiff, the improvements which were discussed

would cost $1,000 or $1,500. And again: " Q. Now, what did Mr. Guth say, or the defendants say, with reference to giving you the option? A. He said, ' Certainly, it is all right. You ought to have it.' "

On April twenty-seventh the plaintiff wrote to the defendant, Mr. F. B. Guth, a letter (Exhibit 2) as follows:

" In accordance with our talk, and feeling that you are so busy just now that it would be rather inconvenient for you to write a letter giving me an option on your property, I am enclosing an option for you to fill in and sign and return to me at your earliest convenience.

" I find upon getting prices for doing some of the work that we wish done, that it is going to cost considerably more than we anticipated, and feel that it is only fair as between man and man, that I should have the privilege of purchasing the property during the term of my lease at the lowest possible price that you would take for it at this time, before the improvements that I make and intend to make, are made, and am confident that you and Mrs. Guth agree with me.

" Trusting that you are gradually becoming accustomed to your new surroundings, and hoping that you are happy and contented, I am

" Very respectfully yours,"

In sending this letter to Mr. Guth, who had moved to Syracuse, the plaintiff also mailed a proposed option. On May eighth the plaintiff went to the residence of the defendants in Syracuse, and obtained the option in question (Exhibit 2), the option being in the language following:

" SYRACUSE, N. Y., *May* 8, 1919.

" For valuable consideration, receipt of which is hereby acknowledged, I hereby give to George H.

Spitzli an option to purchase my premises, situate corner of Genesee Street and Seward Avenue, New Hartford, N. Y., said lot being about 75 ft. front and about 130 ft. wide in rear, with varying depths of from about 120 ft. to 170 ft., for the sum of $9250.00 during the term of his lease of said property, and in case he should decide to purchase I agree to accept as partial payment to bind the bargain the sum of $500.00 and to carry the balance on mortgage for a term of 5 years at 6%, it being mutually understood and agreed that he is to pay Two Hundred and fifty Dollars of the principal sum every six months with interest.

"FRANK B. GUTH [L. S.]
"MARY M. GUTH [L. S.]
"G. H. SPITZLI"

The plaintiff testifies, as to the conversation had at the time the option was signed, as follows: " I said, ' Well, you can readily see that I could not go ahead and make these improvements without an option.' He said, ' No. We are perfectly willing to give it to you, and you ought to have it. And we will be glad to see you have it.' "

While the letter of April twenty-seventh is self-serving evidence, the fact of its receipt by the defendants, and the fact that they did not at the time contradict the statement referring to the previous talk is strongly corroborative of the statement of the plaintiff that such a talk was had. On cross-examination, plaintiff testified as follows: " Q. So that really what you discussed was the general proposition that if you made certain repairs that you would like an option? A. That I would require an option. I must have an option before I went ahead with it. * * * Q. You came to Syracuse the 8th? A. I did. Q. What was done on these improvements at that time? A. The car-

penters were working on the den. The painters were there. The mason that was laying up the fireplace, and his helper was with him. The plumbers, two plumbers at least were putting in the lavatory and toilet on the third floor. Q. So that you had commenced the actual undertaking of this work, had you? A. Yes, on the strength that he would give me the option. Q. Was the work done by contract, any of it? A. No. Q. Day work. You had undertaken this work to complete it without any option or without any contract for purchase, had you? A. I had a promise of an option from him before I started in. * * * I had started them (*i. e.,* improvements). * * * I didn't go ahead and make the larger improvements until I got the signed option. Q. At Syracuse did you tell Mr. Guth what improvements you had made and were making then? A. I told him I was going to do more than I expected, first, and I would have to have an option to protect me. And he said you certainly ought to have it, and we will give it to you, and glad to have you buy the property."

It is the claim of the plaintiff that he made improvements which cost him in excess of $5,000, and that the same are a corresponding benefit to the property. It appears that, during the summer of 1918, the defendants visited the property in question, and saw the improvements that had been made, and there is some dispute as to whether the defendants expressed an approval of the improvements, but there is no claim that they made any objection or found any fault, with the exception that the defendant, Mr. Guth, stated to the plaintiff in substance that the change to the front of the house would undoubtedly increase the amount of his taxes.

On the 9th of February, 1920, the defendants notified the plaintiff in the following language of their

Supreme Court, July, 1920. [Vol. 112.

revocation or attempted revocation of the aforesaid option:

"Syracuse, N. Y., *Feb.* 9, 1920.
"Mr. Geo. H. Spitzli,
"Utica, N. Y.:
"Dear Sir.— We revoke option to you for purchasing our property at corner of Genesee Street and Seward Avenue New Hartford, N. Y., which option is dated May 8, 1919.

"Yours truly
"Frank B. Guth
"Mary M. Guth"

Thereupon the plaintiff called upon the defendants in Syracuse, and tendered them the $500 mentioned in the aforesaid option, and the mortgage referred to in said option, and also a bond, both executed by the plaintiff and his wife, and also a deed for the defendants to execute. The $500 was placed in trust in the Citizens Trust Company of Utica on account of F. B. Guth, and the plaintiff subsequently offered to pay the same into court. The defendants were notified that the same would be paid to them upon their executing a proper conveyance of the property in controversy, and that, upon receiving such conveyance, the plaintiff would deliver the bond and mortgage agreed upon in said option. The defendants have declined to execute the conveyance, and claim that the option was without consideration and lacks mutuality and that they had the right to revoke it before acceptance.

Many interesting questions are presented in this case, as for instance: Is the option under seal? *Matter of Pirie,* 198 N. Y. 209. If under seal, is it subject to contradiction for the purpose of invalidating it? *Fuller* v. *Artman,* 69 Hun, 546. The weight of authority is that, if an option is under seal, although not sup-

ported by a consideration, or, if without a seal, is supported by a nominal consideration, it is irrevocable during the time therein specified. See note to *Thomason* v. *Bescher,* 2 Am. Law Rep. Ann. 631. But, in the view I take of the case, such examination, however interesting, is unnecessary.

An option is an obligation by which one binds himself to sell, or buy, and leaves it discretionary with the other party to buy, or sell, which is simply a contract by which the owner of the property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time. In such contract, two elements exist: *first,* an offer to sell or buy, which does not become a contract until accepted; *second,* the completed contract to leave the offer open for a specified time. These elements are wholly independent and cannot be treated together without great liability to confusion and error. 9 Cyc. 286, n. 14. If a consideration is paid for an offer, it becomes a contract, and is irrevocable and enforcible. Williston Cont. § 61.

Langdell's Summary of Law of Contracts, section 179: '' There is no doubt that A may make a binding promise to sell certain property to B on certain terms, while B is left perfectly free to buy the property or not, and such promise will in most respects confer the same rights to B as though he made a counter-promise to buy.''

Assuming, but not deciding, that the option was void for want of mutuality and for want of consideration, when the plaintiff performed the act in consideration of which the promise was made, viz.: made repairs and improvements upon the premises owned by the defendants, there was a consideration which related back to the original agreement. *Marie* v. *Garrison,* 83 N. Y. 14. On page 26, Andrews, J., uses the following lan-

guage: " It is not essential to the existence of a consideration for the defendant Garrison's agreement, that mutuality of obligation should have existed between the parties when his agreement was made. The necessary consideration would arise if the plaintiffs and Denny, in compliance with the proposition in his letter, and in consideration of his promise therein, did in fact discontinue their opposition to the foreclosure, although they did not at the time bind themselves to do so. When a defendant has actually received the consideration of an agreement by a voluntary performance of an act by the other party, upon his proposition or suggestion, such performance constitutes a consideration which will uphold the defendant's promise." *Keuka College* v. *Ray,* 167 N. Y. 96; *Locke* v. *Taylor,* 161 App. Div. 44; *Lynch* v. *Murphy,* 81 Misc. Rep. 180; *Reynolds* v. *Guilbert,* 13 Hun, 301.

There being a valid contract upon a sufficient consideration, which the defendants could not revoke during the time given to exercise the option, it is enforceable in equity. *Jones* v. *Barnes,* 105 App. Div. 287; *Hamilton College* v. *Roberts,* 223 N. Y. 56; *Mathews Slate Co.* v. *New Empire Slate Co.,* 122 Fed. Repr. 972; *Carney* v. *Pendleton,* 139 App. Div. 152; *Bullock* v. *Cutting,* 155 id. 825; Article by Dean Harlan F. Stone of Columbia Law School, vol. 16, Col. Law Rev. 443.

The case of *Ganss* v. *Guffey Petroleum Co.,* 125 App. Div. 760, cited by the counsel for the defendants, was a case in which the plaintiff's assignor had an option, without consideration, for the purchase of a steamship. The only consideration claimed for the option was the expenditure of money by the holder of same for making a proper examination of the vessel in question. As stated in the prevailing opinion: " The defendant did not induce the plaintiff's assignor in any legal sense to incur expense in examining the vessel. * * *

Such examination, however, did not inure to the defendant's benefit in any way, and was solely for the purpose of enabling the holder of the option to determine whether it would accept the offer and purchase the vessel at the stipulated price.'' This case presents an entirely different state of facts than the case at bar. The force of this case is weakened from the fact that there were two dissenting judges who held, in a memorandum by Clarke, J., speaking of the inspection: '' This was a detriment to the promisee, hence sufficient consideration to support the option and make it irrevocable.''

The most convincing opinion which can be written to sustain a decision for the plaintiff is a statement of the facts, which show beyond question that the defendants knew both before and after the execution of the option of May eighth that the plaintiff expended money upon improvements upon the premises belonging to the defendants, and that such expenditure was made by the plaintiff in the expectation of purchasing the same. In *Simon* v. *Etgen*, 213 N. Y. 589, 595, Werner, J., uses the following language: '' Equity looks through the form to the substance and purpose of the agreement, and moulds its decree in accordance with what the parties may fairly be presumed to have intended. Every contract implies good faith and fair dealing between the parties to it.'' Had the plaintiff paid the defendant $5,000 for the option, there would be nothing to argue. Instead, he expended that sum for improvements, and to allow the defendants to profit by such expenditure, under the circumstances disclosed in this case, would be a violation of every principle of equity applicable, and amount to an unjust enrichment of the defendants.

Judgment for plaintiff, with costs.